UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

**REPORT AND RECOMMENDATION**

Plaintiff,

08-CV-00706(A)(M)

STERLING JEWELERS INC.,

Defendant.

---

This case was referred to me by Hon. Richard J. Arcara for supervision of pretrial proceedings, including preparation of a report and recommendation on dispositive motions [22].[1] Before me is the motion of Sterling Jewelers Inc. ("Sterling") to dismiss that portion of the claims of plaintiff Equal Employment Opportunity Commission ("EEOC") which seek relief for discrimination occurring prior to July 22, 2004 [15]. Oral argument was held on June 26, 2009 [52, 54], and the parties submitted post-argument letter briefs [55, 56]. For the following reasons, I recommend that Sterling's motion be DENIED.

**BACKGROUND**

The EEOC commenced this gender discrimination action pursuant to Sections 706 and 707 of Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §§2000e-5(f)(1) and (3) and 2000e-6). "A §706 case is based on one or more individual charges or complaints of unlawful discrimination by an employer, and a §707 case is based on a pattern or practice of systemic discrimination by an employer. . . . [B]oth a §706 case and a §707 case can be filed by the EEOC in its own name ". E.E.O.C. v. Mitsubishi Motor Manufacturing of America, Inc., 990 F. Supp. 1059, 1084 (C.D. Ill. 1998).

---

[1] Bracketed references are to the CM/ECF docket entries.

The complaint alleges that "since at least January 1, 2003, Sterling has engaged in unlawful employment practices throughout its stores nationwide . . . by maintaining a system for making promotion and compensation decisions that is excessively subjective and through which Sterling has permitted or encouraged managers to deny female employees equal access to promotion opportunities and the same compensation paid to similarly situated male employees" ([1], ¶7(a)), and by "maintain[ing] a system for making promotion and compensation decisions that is excessively subjective and that has a disparate impact on female retail sales employees". Id., ¶8(a).

Section 706 of Title VII (42 U.S.C. §2000e-5(e)(1)) requires, *inter alia*, that an administrative "charge shall be filed by or on behalf of the person aggrieved within three hundred days after the unlawful employment practice occurred".[2] It appears undisputed that the earliest charge of discrimination filed with the EEOC was filed on May 18, 2005. *See* Sterling's Memorandum of Law [16], p. 3. However, the EEOC alleges that "since at least January 1, 2003, Sterling has engaged in unlawful employment practices throughout its stores nationwide" (complaint [1], ¶7), and seeks to recover for all of those practices.

Although it acknowledges that the employee EEOC charges were timely in some respects, Sterling argues that the EEOC cannot recover for acts occurring before July 22, 2004 (300 days prior to the first administrative charge), and moves pursuant to Fed. R. Civ. P. ("Rule") 12(b)(1) and (6) to dismiss the complaint to the extent that it seeks relief for discrimination occurring prior to that date. Sterling's Memorandum of Law [16]. In response, the EEOC argues that no statute of limitations applies to its claims. EEOC's Memorandum of

---

[2] In states which (unlike New York) do not have their own investigatory agency, the charge must be filed within 180 days of the unlawful employment practice. 42 U.S.C. §2000e-5(e)(1).

Law [31], pp. 19-25. In the alternative, it argues that the "continuing violation" doctrine saves these claims from the limitations period. Id., pp. 4-19.

**ANALYSIS**

**A.      Does the Does the "300-Day" Requirement of §706 Limit the
         Relief Available to the EEOC?**

"An individual wishing to challenge an employment practice under [§706] must first file a charge with the EEOC . . . . Such a charge must be filed within a specified period (either 180 or 300 days, depending on the State) after the alleged unlawful employment practice occurred . . . and if the employee does not submit a timely EEOC charge, the employee may not challenge that practice in court." Ledbetter v. Goodyear Tire & Rubber Co., Inc. 550 U.S. 618, 623-24 (2007). "By operation of §§2000e-5(e)(1) and 2000e-5(f)(1), a Title VII claim is time barred if it is not filed within these time limits." Id. at 632.

The question before me is whether these provisions also limit the relief which can be sought in an enforcement action commenced by the EEOC, rather than by an individual employee. Recognizing that courts have taken conflicting positions on this question,[3] I conclude that they do not limit the relief which the EEOC may seek.[4]

---

[3]     *See, e.g.,* E.E.O.C. v. CRST Van Expedited, Inc., 615 F. Supp. 2d 867, 877 (N.D. Iowa 2009) ("district courts offer widely divergent analyses that are impossible to reconcile or even tidily summarize. All that may be said is that, whereas some district courts appear to indicate the EEOC may be subject to a statute of limitations . . . other district courts appear to grant the EEOC the power to resurrect stale claims").

[4]     In finding that the 300-day requirement of section 706 applies to the EEOC, some courts have relied on the provision of section 707 (42 U.S.C.§ 2000e-6(e)) that "all such actions shall be conducted in accordance with the procedures in section 2000e-5 [§706] of this title." *See*, *e.g.*, E.E.O.C. v. Custom Companies, Inc., 2004 WL 765891, *8 (N.D.Ill. 2004). The only relevant procedural requirement imposed by section 706 is that a charge be filed, and charges *were* filed in this case.

There is a fundamental difference between the rights asserted by the EEOC and those asserted by an individual employee. "The EEOC is not merely a proxy for the victims of discrimination . . . . Although the EEOC can secure specific relief, such as hiring or reinstatement, constructive seniority, or damages for back pay or benefits denied, on behalf of discrimination victims, the agency is guided by the overriding public interest in equal employment opportunity . . . asserted through direct Federal enforcement . . . . When the EEOC acts, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination." General Telephone Co. of the Northwest, Inc. v. E.E.O.C., 446 U.S. 318, 326 (1980) (holding that the EEOC's claim for relief under §706 was not subject to the class action requirements of Rule 23).

Thus, "whenever the EEOC chooses from among the many charges filed each year to bring an enforcement action in a particular case, the agency may be seeking to vindicate a public interest, not simply provide make - whole relief for the employee, even when it pursues entirely victim - specific relief." E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 296 (2002).

In deciding whether the 300-day limitation applicable to private party claims also applies to EEOC claims, I must be cognizant of "Title VII's integrated, multistep enforcement procedure", Ledbetter, supra, 550 U.S. at 629:

> "That procedure begins when a charge is filed with the EEOC alleging that an employer has engaged in an unlawful employment practice. A charge must be filed within 180 days after the occurrence of the allegedly unlawful practice, and the EEOC is directed to serve notice of the charge on the employer within 10 days of filing. The EEOC is then required to investigate the charge and determine whether there is reasonable cause to believe that it is true. This determination is to be made as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the filing of the charge. If the EEOC finds that there is reasonable cause it shall endeavor to eliminate any such alleged

> unlawful employment practice by informal methods of conference, conciliation, and persuasion. When "the Commission (is) unable to secure . . . a conciliation agreement acceptable to the Commission, the Commission may bring a civil action."

Occidental Life Insurance Co. of California, v. E.E.O.C., 432 U.S. 355, 359-60 (1977).

Thus, "the EEOC does not function simply as a vehicle for conducting litigation on behalf of private parties; it is a federal administrative agency charged with the responsibility of investigating claims of employment discrimination and settling disputes, if possible, in an informal, noncoercive fashion. Unlike the typical litigant against whom a statute of limitations might appropriately run, the EEOC is required by law to refrain from commencing a civil action until it has discharged its administrative duties." Id. at 368.

For that reason, whereas a private plaintiff "can bring a lawsuit for only those unlawful employment practices described in his or her administrative charge", Montes v. Vail Clinic, Inc., 497 F. 3d 1160, 1166 (10th Cir. 2007), that restriction does not apply to the EEOC. "EEOC enforcement actions are not limited to the claims presented by the charging parties. Any violations that the EEOC ascertains in the course of a reasonable investigation of the charging party's complaint are actionable." General Telephone, supra, 446 U.S. at 331 (refusing to "limit the EEOC action to claims typified by those of the charging party").

"The difference between the two classes of case, *i.e.*, cases filed by private individuals and those filed by the EEOC, is that exhaustion of administrative remedies is an issue when the suit is brought by a private party but not when the Commission is the plaintiff. Were the private party permitted to add claims that had not been presented in the administrative charge filed with the EEOC, the Commission's informal procedures for resolving discrimination charges . . . would be by-passed, in derogation of the statutory scheme . . . . That is not an issue

when the EEOC itself is the plaintiff, which is why a suit by the EEOC is not confined to claims typified by those of the charging party . . . . The charge incites the investigation, but if the investigation turns up additional violations the Commission can add them to the suit." E.E.O.C. v. Thomas Dodge Corp. of N.Y., 524 F. Supp. 2d 227, 236 (E.D.N.Y.2007) (*quoting* E.E.O.C. v. Caterpillar, Inc., 409 F. 3d 831, 832-33 (7th Cir.2005)); *see also* E.E.O.C. v. Concentra Health Services, Inc., 496 F. 3d 773, 778 (7th Cir. 2007) ("The charge triggers the investigation, but if the investigation turns up additional violations, the EEOC can add them to its suit; there is no need for the EEOC's complaint to be closely related to the charge").

"This doctrine not only applies to additional illegal practices that the EEOC discovers during the course of a reasonable investigation of the charge, but also to additional victims who are uncovered during such investigation." Thomas Dodge, supra, 524 F. Supp. 2d at 236.[5] "This authority possessed by the EEOC, however, is not unbridled. The additional practices and/or victims must have been ascertained in the course of a reasonable investigation of the charging party's complaint and the EEOC must have provided adequate notice to the defendant - employer of the nature of such charges to allow resolution of the charges through conciliation." Id. at 236-37.

Applying these principles, the court in E.E.O.C. v. Gonnella Baking Co., 2009 WL 307509 (N.D.Ill. 2009) denied the employer's motion for partial dismissal under circumstances similar to those of this case. Gonnella arose from "four separate charges filed with the EEOC by four employees of Defendant, starting in November 2005". Id., *1. Following its investigation of those charges, the EEOC filed a complaint "alleg[ing] that

---

[5] Significantly, Sterling does not challenge the fact that the EEOC's complaint seeks relief on behalf of Sterling's employees nationwide, rather than merely on behalf of those who filed EEOC charges.

Defendant committed both acts of discrimination and retaliation against the four employees, beginning as early as January 2004". Id.

Addressing the employer's motion for dismissal of claims for relief predicated upon acts occurring prior to the EEOC charge-filing deadline, the court noted that "the standard for suits filed by the EEOC differs from the standard used when a individual files suit, and that the EEOC is not limited to claims made in the charge". Id. It therefore denied the employer's motion for partial dismissal of the complaint, and instead stayed the action in order "to allow the parties to participate in the conciliation process regarding the retaliation claims prior to June 2005". Id., *4.[6]

At oral argument, Sterling's attorney argued that if there is no statute of limitations, the "the EEOC could sue Sterling back to 2000, 1985, or all the way back to 1964 when the statute was arisen. And I think that . . . legally that runs headlong into these principles underlying the statute of repose". [54, p. 16]. *See also* CRST Van, supra, 615 F. Supp. 2d at 878 ("To adopt the EEOC's construction of Title VII would permit the EEOC to destroy all principles of repose and force employers to defend against zombie-like claims from the distant past"). However, the same arguments were considered and rejected in Occidental:

> "The absence of inflexible time limitations on the bringing of lawsuits will not, as the company asserts, deprive defendants in Title VII civil actions of fundamental fairness or subject them to the surprise and prejudice that can result from the prosecution of stale claims. Unlike the litigant in a private action who may first learn of the cause against him upon service of the complaint, the Title VII defendant is alerted to the possibility of an enforcement suit within 10 days after a charge has been filed. This prompt

---

[6] In this case, by contrast, Sterling has not argued that conciliation did not occur, nor has it requested a stay of proceedings.

> notice serves, as Congress intended, to give him an opportunity to gather and preserve evidence in anticipation of a court action.
>
> Moreover, during the pendency of EEOC administrative proceedings, a potential defendant is kept informed of the progress of the action. Regulations promulgated by the EEOC require that the charged party be promptly notified when a determination of reasonable cause has been made, . . . and when the EEOC has terminated its efforts to conciliate a dispute."
>
> It is, of course, possible that despite these procedural protections a defendant in a Title VII enforcement action might still be significantly handicapped in making his defense because of an inordinate EEOC delay in filing the action after exhausting its conciliation efforts. If such cases arise the federal courts do not lack the power to provide relief. This Court has said that when a Title VII defendant is in fact prejudiced by a private plaintiff's unexcused conduct of a particular case, the trial court may restrict or even deny back pay relief . . . . The same discretionary power to locate a just result in light of the circumstances peculiar to the case . . . can also be exercised when the EEOC is the plaintiff."

432 U.S. at 372-73. *See also* Morgan, supra, 536 U.S. at 121 ("a party may not be entitled to relief if its conduct of the cause has improperly and substantially prejudiced the other party. In such cases, the federal courts have the discretionary power to locate a just result in light of the circumstances peculiar to the case").

In any event, whether or not their application leads to a harsh result, I am not at liberty to rewrite the deadlines which Congress has established (or failed to establish). The Court in Occidental clearly stated that "neither §706(f) nor any other section of the Act explicitly requires the EEOC to conclude its conciliation efforts and bring an enforcement suit within any

maximum period of time." 432 U.S. at 360. Congress, like everyone else, has been aware of this interpretation for over 30 years, and has not seen fit to amend the Act.[7]

If it has not done so, neither can I. "Respectful of the legislative process that crafted this scheme, we must give effect to the statute as enacted . . . and we have repeatedly rejected suggestions that we extend or truncate Congress' deadlines." Ledbetter, supra, 550 U.S. at 630.

**B.**	**In the Alternative, at This Stage of the Case the "Continuing Violation" Doctrine Prevents Dismissal of the EEOC's Claims**.

The EEOC argues in the alternative that, even if its claims would otherwise be time-barred, they sufficiently allege a "continuing violation" so as to avoid dismissal at the pleading stage. I agree. "If a continuing violation is shown, a plaintiff is entitled to have a court consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred.'" Fitzgerald v. Henderson, 251 F. 3d 345, 359 (2d Cir. 2001), cert. denied, 536 U.S. 922 (2002).

For example, in Employees Committed For Justice v. Eastman Kodak Co., 407 F. Supp. 2d 423 (W.D.N.Y. 2005) (Feldman, M.J.), plaintiffs commenced a putative class action

---

[7] I find it significant that, in response to the Supreme Court's decision in Ledbetter, Congress recently amended Title VII to enlarge the statute of limitations for private employees (*see* discussion at pp. 11-12, *infra*). The stated purpose of the amendment was to "be a narrow reversal of the Ledbetter decision, without upsetting any other current law" (H.R. REP. 110-237, 2007 WL 2074846, *17 (July 18, 2007)). However, Congress did *not* amend the statute in response to Occidental's holding that Title VII does not impose a statute of limitations on actions by the EEOC, nor did it do so in response to General Telephone's holding that EEOC enforcement actions are not limited to claims asserted in the employee's administrative charge. When Congress "has not sought to alter th[ose] interpretation[s] although it has amended the statute in other respects, then presumably the legislative intent has been correctly discerned." North Haven Board of Education v. Bell, 456 U.S. 512, 535 (1982).

comprised of past, present, and future African American employees of Kodak. Plaintiffs alleged that "'Kodak has engaged in an ongoing pattern and practice of discrimination against its African American Employees,' including discrimination in compensation, promotions, wage and job classifications, and maintaining a hostile work environment." Id. at 427.

Kodak moved to dismiss certain claims as being outside of the applicable limitations period, arguing that "plaintiffs can prove no set of facts to support their claim of a pattern or practice of discriminatory pay, failure to promote, or retaliation that would be anything other than discrete discriminatory acts for which the continuing violation theory does not apply as a matter of law." Id. at 441.

However, Judge Feldman declined to dismiss the claims at the pleading stage, and instead deferred "determination as to the applicability of the continuing violations theory until a more complete factual record is before the Court." Id. at 442. In doing so, he reasoned that

> "The amended complaint here charges more than discrete acts of 'run of the mill' failure to promote or disparate pay claims. The amended complaint alleges long standing and over-arching company policies authorizing Kodak managers to make racially discriminatory pay and promotion decisions or assigning lesser wage grades to African American employees. The amended complaint alleges Kodak implemented a systemic practice of grooming white employees for advancement while denying the same opportunities for African American employees. Deciding whether these charges, if true, merely allege discrete acts of disparate pay and failure to promote or implicate a company-wide practice, policy and custom of intentional race-based discrimination is a task that should not be decided in a factual vacuum. Determining the applicability of the continuing violation theory at this stage of the litigation is unwise given the nature of the factual allegations set forth in the amended complaint."

Id. at 441.

For the same reasons, had I concluded that the §706's 300-day statute of limitations applies to the EEOC's claims, I would nevertheless recommend that Sterling's motion seeking partial dismissal of the EEOC's claims be denied at this stage, without prejudice to renewal as a motion for partial summary judgment following further development of the record.[8]

C.  **Applicability of the "Lilly Ledbetter Fair Pay Act of 2009"**

After Sterling filed its motion, the "Lilly Ledbetter Fair Pay Act of 2009" (Pub.L. No. 111-2, §3, 123 Stat. 5, 5-6 (codified as amended at 42 U.S.C. §2000-e5(e)(3)) was signed into law. Therefore I permitted the parties to file supplemental briefing on how (if at all) the Act impacts the motion.

The Act adds the following provision to Title VII:

"An unlawful employment practice occurs, with respect to discrimination in compensation in violation of this title, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice."

The Act retroactively applies "to all claims of discrimination in compensation under Title VII . . . that are pending on or after" May 28, 2007 (the day before Ledbetter was

---

[8] Sterling relies heavily on Morgan, supra.. However, "Morgan . . . did not extend to 'pattern-or-practice' claims." Moreno v. Town of Huntington, 2008 WL 746830, *5 (E.D.N.Y. 2008), aff'd, 2009 WL 1850913 (2d Cir. 2009) (summary order). *See* Morgan, 536 U.S. at 115, n. 9 ("We have no occasion here to consider the timely filing question with respect to 'pattern-or-practice' claims brought by private litigants as none are at issue here.").

-11-

decided). Id. §6. However, because the legislative history of the Act states that it was intended to "be a narrow reversal of the Ledbetter decision, without upsetting any other current law" (H.R. REP. 110-237, 2007 WL 2074846, *17 (July 18, 2007)), I conclude that it has no effect on my decision in this case.[9]

## CONCLUSION

For these reasons, I recommend that Sterling's motion for partial dismissal of the EEOC's complaint [15] be DENIED. Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the clerk of this court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the clerk of this court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co., 840 F. 2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F. 2d 55 (2d Cir. 1988).

---

[9] Although Sterling filed a notice pursuant to Loc. R. Civ. P. 24 of its intention to contest the constitutionality of the Lilly Ledbetter Fair Pay Act [41], I did not certify this fact to the Attorney General pursuant to 28 U.S.C. §2403(a) because I did not reach this issue in determining Sterling's motion for partial dismissal.

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules of Civil Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." <u>Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report and Recommendation), may result in the district judge's refusal to consider the objection.</u>

**SO ORDERED.**

DATED: September 30, 2009

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge