UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

                                      Plaintiff,

                v.                                                             **DECISION AND ORDER**
                                                                                            08-CV-706A

STERLING JEWELERS INC.,

                                      Defendant.

───────────────────────────────

Currently before the Court is a motion by plaintiff EEOC seeking to bifurcate discovery and trial of issues of liability and damages. For the reasons stated, the motion to bifurcate is granted in part and denied in part. Discovery and trial will be bifurcated as set forth below.

## **BACKGROUND**

The EEOC brought this action on September 23, 2008 on behalf of female employees currently or formerly employed by defendant Sterling Jewelers, Inc. ("Sterling"). Sterling is a retail jewelry company that operates approximately 1,400 stores nationwide, located in all 50 states. The EEOC asserts that since 2003, Sterling has engaged in a pattern or practice of discrimination by paying female employees less than male employees and denying them promotional opportunities. According to the complaint, Sterling has engaged in intentional discrimination by "maintaining a system

for making promotion and compensation decisions that is excessively subjective" which "permitted or encouraged managers to deny female employees equal access to promotion opportunities and the same compensation paid to similarly situated males." (*See* Compl. Dkt. 1, at ¶ 7(a)).  The EEOC seeks class-wide injunctive relief as well as compensatory and punitive damages.  According to the EEOC, the class of employees consists of approximately 20,000 women currently or formerly employed by Sterling-owned retail stores throughout the country.

On February 12, 2010, the EEOC filed a motion seeking to bifurcate discovery and trial into two stages as follows:

> Stage I would concern the production of personnel data necessary for statistical analyses and Sterling's policies and procedures, depositions of witnesses with knowledge relevant to the pattern or practice claims, such as managers familiar with Sterling's practices and policies, current or former employees who have experienced or witnessed discrimination, and statistical or other experts. Should the trier of fact find liability regarding the pattern or practice claims, the Court will determine appropriate class-wide injunctive remedies and then Stage II discovery will commence, to be followed by a Stage II trial.

> If EEOC prevails during Stage I, its proof of the existence of a pattern or practice of discrimination entitles each class member to an inference that any particular pay or promotion decision during the period in which the discriminatory policy was in force was made in pursuit of that policy. The burden therefore shifts to Sterling to demonstrate that its employment decisions were made for lawful reasons. Stage II discovery and trial will address issues concerning each class member's claim for relief, including whether Sterling can meet its burden as to each class member and if not, the remedies to which that class member is entitled, including back pay, front pay, and compensatory damages, if any.

(*See* EEOC Memo. of Law in Support of Motion to Bifurcate ("EEOC Memo"), Dkt. 85, at 1-2).[1]

As part of the Stage I determination, the EEOC also seeks a determination as to punitive damages. The EEOC requests that the Stage I jury decide whether the standard for punitive damages has been met (i.e., whether Sterling acted with malice or with reckless indifference to plaintiffs' federally-protected rights), and if so, the amount of punitive damages to be awarded to the entire class of plaintiffs.

In response, Sterling agrees that the matter should be bifurcated into two stages: a liability stage and a damages stage. However, Sterling strongly opposes the EEOC's contention that punitive damages must be determined in Stage I. Sterling contends that to do so would violate due process, its Seventh Amendment right to a jury trial and the Rules Enabling Act, 28 U.S.C. § 2072(b).[2]

## DISCUSSION

The EEOC alleges a pattern or practice of discrimination in violation of Title VII. Pattern-or-practice disparate treatment claims focus on allegations of widespread acts of intentional discrimination against individuals. "To succeed on a pattern-or-practice claim, plaintiffs must prove more than sporadic acts of discrimination; rather, they must

---

[1] As part of that motion, the EEOC also sought an order requiring the parties to coordinate discovery with a parallel classwide arbitration proceeding alleging "nearly identical sex discrimination allegations." (*See* EEOC Memo, Dkt. 85, at 13). On March 24, 2010, Magistrate Judge McCarthy denied the request to coordinate discovery. (*See* Text Order, Dkt. 97).

[2] The Rules Enabling Act prohibits the Federal Rules of Civil Procedure from "abridg[ing], enlarg[ing] or modify[ing] any substantive right." *See* 28 U.S.C. § 2072(b).

3

establish that intentional discrimination was the defendant's 'standard operating procedure.'" *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 158 (2d Cir. 2001).  In this motion, the EEOC seeks to bifurcate issues of liability and damages into two stages.  Stage I would include discovery and trial of issues relating to pattern or practice liability, injunctive relief and punitive damages.  Stage II would encompass the individual members' claims for compensatory damages and defenses to those individual claims.

As a general matter, Supreme Court and Second Circuit caselaw support the use of bifurcation in Title VII actions asserting pattern-or-practice discrimination.   In *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977), the Court explained the procedure for bifurcating a Title VII pattern-or-practice class action:

> [The plaintiff's] initial burden is to demonstrate that unlawful discrimination has been a regular procedure or policy followed by an employer or group of employers.  At the initial, "liability" stage of a pattern-or-practice suit the [plaintiff] is not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the employer's discriminatory policy. Its burden is to establish a prima facie case that such a policy existed. The burden then shifts to the employer to defeat the prima facie showing of a pattern or practice by demonstrating that the [plaintiff]'s proof is either inaccurate or insignificant. An employer might show, for example, that the claimed discriminatory pattern is a product of pre-Act hiring rather than unlawful post-Act discrimination, or that during the period it is alleged to have pursued a discriminatory policy it made too few employment decisions to justify the inference that it had engaged in a regular practice of discrimination.
>
> If an employer fails to rebut the inference that arises from the [plaintiff]'s prima facie case, a trial court may then conclude that a violation has occurred and determine the appropriate remedy. Without any further evidence from the [plaintiff], a court's finding of a pattern or practice justifies an award of prospective relief.  Such relief might take the form of an injunctive order against continuation of the discriminatory practice, an order that the employer keep records of its future employment decisions

> and file periodic reports with the court, or any other order "necessary to ensure the full enjoyment of the rights" protected by Title VII.

*Teamsters*, 431 U.S. at 360-61(footnote omitted).  The Court further explained that, if individual relief for the victims is also sought (in addition to the prospective injunctive relief), "a district court must usually conduct additional proceedings after the liability phase of the trial to determine the scope of individual relief."  *Id.* at 361.  "[T]he question of individual relief does not arise until it has been proved that the employer has followed an employment policy of unlawful discrimination."  *Id.*  The finding of pattern-or-practice discrimination during the initial liability stage creates an inference or presumption that any particular employment decision made during the time frame when the discriminatory policy was in effect was made pursuant to the discriminatory policy.  The burden then shifts to the employer to demonstrate that the employment decision as to that particular employee was made for a different, lawful reason.  *Id.* at 362.

The Second Circuit endorsed a similar bifurcation procedure in *Robinson v. Metro-North Commuter R.R.,* 267 F.3d 147 (2d Cir. 2001).  The Court explained:

> Generally, a pattern-or-practice suit is divided into two phases: liability and remedial. At the liability stage, the plaintiffs must produce sufficient evidence to establish a prima facie case of a policy, pattern, or practice of intentional discrimination against the protected group.  Plaintiffs have typically depended upon two kinds of circumstantial evidence to establish the existence of a policy, pattern, or practice of intentional discrimination: (1) statistical evidence aimed at establishing the defendant's past treatment of the protected group, and (2) testimony from protected class members detailing specific instances of discrimination.

*Robinson,* 267 F.3d at 158 (citing *Teamsters*, 431 U.S. at 360-62)(internal footnote and quotations omitted).

If the plaintiffs are successful in demonstrating that the employer engaged in a pattern or practice of unlawful discrimination, the Court can proceed to fashion injunctive relief. *Id.* Thus, injunctive relief can be determined at the conclusion of Stage I. However, if individual relief is sought in the form of back pay, front pay or compensatory damages, the Court must proceed to Stage II. The Second Circuit explained:

> If individual relief such as back pay, front pay, or compensatory recovery is sought in addition to class-wide injunctive relief, the court must conduct the "remedial" phase. Class members enter this second phase with a presumption in their favor that any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy.
>
> The effect of the presumption from the liability stage is to substantially lessen each class member's evidentiary burden relative to that which would be required if the employee were proceeding separately with an individual disparate treatment claim under the *McDonnell Douglas* framework. Rather than having to make out a prima facie case of discrimination and prove that the employer's asserted business justification is merely a pretext for discrimination, a class member at the remedial stage of a pattern-or-practice claim need only show that he or she suffered an adverse employment decision and therefore was a potential victim of the proved [class-wide] discrimination. The burden of persuasion then shifts to the employer to demonstrate that the individual [was subjected to the adverse employment decision] for lawful reasons.
>
> If the employer is unable to establish a lawful reason for an adverse employment action, the employee is entitled to individualized equitable relief, which may include back pay and front pay. Class members who seek compensatory damages in addition to individualized equitable relief must then prove that the discrimination caused them emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, [or] other nonpecuniary losses.

*Id.* at 159-60 (internal quotations and citations omitted).

The parties are in accord that this matter should be bifurcated and that issues of

liability and injunctive relief should be addressed at Stage I. They also agree, in accordance with the foregoing caselaw, that issues of individual relief including compensatory damages and back pay must be addressed at Stage II. Where they diverge is on the issue of punitive damages. The EEOC maintains that punitive damages must be determined during Stage I, whereas Sterling argues that doing so would violate its due process and Seventh Amendment rights.

Both *Teamsters* and *Robinson* are silent on this issue. The EEOC argues that judicial economy favors a punitive damages determination at Stage I. According to the EEOC, the Stage I discovery and trial would focus on the EEOC's "statistical, anecdotal and expert evidence of discrimination and Sterling's affirmative defenses to the pattern or practice claims." (*See* EEOC Motion to Bifurcate, Dkt. 85, at 8). The EEOC claims that "[t]he evidence EEOC will present in support of its claim for punitive damages will be virtually identical to the evidence EEOC will present to prove that Sterling engaged in a pattern or practice of intentional discrimination." (*Id.* at 10). According to the EEOC, this "overlap of proof" mandates that punitive damages be determined at Stage I. Requiring punitive damages to be addressed at Stage II would, according to the EEOC, "result in a tremendous waste of time" and "risk . . . inconsistent verdicts." (*Id.* at 12).

Sterling argues that the EEOC's proposed "punitives first" scheme (whereby punitive damages are assessed in Stage I) violates due process because it allows the Stage I jury to determine the amount of punitive damages without regard to the amount of compensatory damages owed. Sterling cites *State Farm Mutual Auto Ins. v. Campbell*, 538 U.S. 408 (2003) in support of its position. In *State Farm*, the Supreme

Court held that a punitive damages award of $145 million violated due process where the compensatory damages were only $1 million. The Court explained that "there are procedural and substantive constitutional limitations" on the amount of punitive damages awarded. *Id.* at 416. When punitive damages are awarded, "courts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and the general damages recovered." *Id.* at 426. "To the extent that an award is grossly excessive [in relation to the amount of actual compensatory damages suffered], it furthers no legitimate purpose and constitutes an arbitrary deprivation of property." *Id.* at 417. In evaluating the reasonableness of a punitive damages award, "[i]t should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if defendant's culpability, *after having paid compensatory damages*, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." *Id*. at 419 (emphasis added).

Five years later, in *Phillip Morris USA v. Williams*, 549 U.S. 346 (2007), the Supreme Court again reiterated its view that the Constitution imposes both substantive and procedural limits on punitive damage awards. In that case, the Court held that the Due Process Clause forbids the imposition of a punitive damages award to punish a defendant for injury that it inflicts upon victims who are not part of the litigation because it denies the defendant the "opportunity to present every available defense." *Id.* at 353-54. The Court explained that imposing punitive damages for harm caused to persons who are not parties to the litigation would

> add a near standardless dimension to the punitive damages equation. How many such victims are there? How seriously were they injured? Under what circumstances did injury occur? The trial will not likely answer such questions as to nonparty victims. The jury will be left to speculate. And the fundamental due process concerns to which our punitive damages cases refer—risks of arbitrariness, uncertainty, and lack of notice—will be magnified.

*Id.*

The Supreme Court has made clear that any punitive damages determination must be "reasonable and proportionate" to the amount of actual (i.e., compensatory) damages. *State Farm*, 538 U.S. at 426. A punitive damages award that is grossly disproportionate to the amount of harm suffered will not withstand constitutional scrutiny. Thus, to survive due process, punitive damages must be proportional to the amount of compensatory damages owed. Although the Supreme Court has refused to "identify concrete constitutional limits on the ratio between harm . . . to the plaintiffs and the punitive damages award," *State Farm*, 538 U.S. at 424, it has suggested that "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *Id.* at 425.

The EEOC's proposal to determine punitive damages at the conclusion of Stage I, before compensatory damages are determined, runs afoul of the principles articulated in *State Farm* and *Phillip Morris USA*. Under the EEOC's proposed scheme, the Stage I jury will determine the amount of punitive damages to be awarded. Yet, at the time that the jury is being asked to make that finding, there will have been no determination as to the number of class members adversely affected by the discriminatory practice. A

finding of liability at the conclusion of Stage I does not necessarily entitle all (or even any) members to compensatory damages. Rather, it merely creates the *presumption* that any particular adverse employment decision made during the period of discrimination was made pursuant to the discriminatory policy. *Robinson*, 267 F.3d at 159. To obtain compensatory relief, however, that class member must show during the remedial stage (Stage II) that she suffered an adverse employment decision "'and therefore *was a potential victim* of the proved discrimination.'" *Id.* (quoting *Teamsters*, 431 U.S. at 362)(emphasis added). It is only if the employer then fails to rebut that presumption by showing that the adverse action was taken for a lawful reason that that compensatory damages become owing. At that point, an individualized determination is made as to the amount of back pay, emotional pain, inconvenience, and mental anguish suffered as a result of that adverse action. In other words, even though the proposed class consists of approximately 20,000 members, whether all 20,000 class members were victims of the discriminatory policy, or whether the number is actually far less, is an issue that will not be determined until Stage II. Likewise, the actual harm suffered by those members remains unresolved at that juncture. At Stage I, the only issue being determined is whether there was a discriminatory policy or practice in the first place. However, the EEOC's proposed scheme of assessing punitive damages on a class-wide basis before any determination is made as to the actual harm caused by that policy is inconsistent with the principles articulated in *State Farm* and *Phillip Morris USA*. Rather than ensuring a "proportional relationship" between compensatory and punitive damages, as *State Farm* instructs, the EEOC's

plan seeks to completely divorce any relationship between those determinations.

The EEOC attempts to distinguish *State Farm* and *Phillip Morris USA* by asserting that the statutory cap of $300,000 per plaintiff acts to "cabin" the jury's discretion to award excessive punitive damages. The Court is unpersuaded because, under the EEOC's scheme, the amount of punitive damages is decided *before* the actual number of victims is determined. The Stage I jury will be asked to impose a punitive damages award of up to $300,000 for each of the 20,000 potential victims, for a total potential punitive damages award of $6 billion. Yet, whether 20,000 or merely 200 victims actually suffered harm because of the discriminatory policy will not be determined until Stage II. Because the number of actual victims remains only hypothetical at the conclusion of Stage I, the $300,000 cap per victim does not serve to "cabin" the jury's discretion at all.

For this reason, several courts and commentators have declined to adopt the "punitives first" bifurcation procedure proposed by the EEOC. For example, in *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 418 (5th Cir. 1998), the Fifth Circuit rejected the idea that punitive damages can be assessed on a class-wide basis at the conclusion of the liability phase:

> Punitive damages cannot be assessed merely upon a finding that the defendant engaged in a pattern or practice of discrimination. Such a finding establishes only that there has been general harm to the group and that injunctive relief is appropriate. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 266, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (O'Connor, J., concurring in the judgment). Actual liability to individual class members, and their entitlement to monetary relief, are not determined until the second stage of the trial. *See id.; Dillon v. Coles*, 746 F.2d 998, 1004 (3d Cir. 1984). And because punitive damages must be reasonably related to the reprehensibility of the defendant's conduct and

> to the compensatory damages awarded to the plaintiffs, *see Patterson*, 90 F.3d at 943-44 (citing *BMW v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 1598-99, 134 L.Ed.2d 809 (1996)), recovery of punitive damages must necessarily turn on the recovery of compensatory damages. Thus, punitive damages must be determined after proof of liability to individual plaintiffs at the second stage of a pattern or practice case, not upon the mere finding of general liability to the class at the first stage.

*Id.* at 417-18; *see also Lemon v. Int'l Union of Operating Engineers, Local 139*, 216 F.3d 577, 581 (7th Cir. 2000)("[T]o win punitive damages, an individual plaintiff must establish that the defendant possessed a reckless indifference to the plaintiff's federal rights- a fact-specific inquiry into that plaintiff's circumstances."); *EEOC v. Int'l Profit Assoc. Inc.*, 01-C-4427, 2007 WL 3120069 (N.D. Ill. 2007)(rejecting EEOC's request to have punitive damages determined at the conclusion of the Stage I liability phase); *see also* Joseph M. McLaughlin, 2 *McLaughlin on Class Actions,* § 8:18(6th ed)(observing that "[t]he great majority of decisions are in accord" in rejecting trial plans seeking to decide punitive damages for an entire class without knowing the extent of compensatory damages due individual class members); Victor E. Schwartz and Christopher E. Appel, *Putting the Cart Before the Horse: The Prejudicial Practice of a "Reverse Bifurcation" Approach to Punitive Damages*, 2 Charleston L. Rev. 375, 405 (2008)(arguing that there exists "no constitutionally permissible justification for a court to allow a jury to determine punitive damages before they have made a legitimate finding of liability and can award compensatory damages."); Sheila B. Scheuerman, *Two Worlds Collide: How the Supreme Court's Recent Punitive Damages Decision Affect Class Actions*, 60 Baylor L. Rev. 880 (Fall 2008)(arguing that it violates due process to calculate punitive damages before compensatory damages are assessed).

The nature of the allegations in this case further illustrates the impropriety of determining punitive damages at the conclusion of Stage I.  The pattern or practice of discrimination alleged in this case does not stem from an objective, uniform national policy.  Rather, the EEOC claims Sterling fostered a policy of allowing "excessively subjective" promotion and compensation decisions.  Without objective criteria governing pay and promotional decisions, the EEOC claims that store managers located throughout the nation were permitted to engage in subjective pay and promotional decisions that resulted in a pattern or practice of discrimination.  The EEOC's allegations of broad and overly subjective decisionmaking necessarily implies that not all 20,000 members were affected by the discriminatory policy in the same manner.  Some of the women may have been subjected to overt discrimination, for longer periods of time, resulting in more substantial emotional consequences, while others may not have been affected by the subjective decisionmaking at all.  In other words, the discrimination experienced by different women at different stores in different regions by different managers throughout the nation will vary.  While the treatment by some managers might merit punitive damages, others will not.  To determine punitive damages at the Stage I juncture, without regard to the individual experiences of each woman, is simply inappropriate given the highly individualized and subjective manner in which the discrimination is alleged to have occurred.

The Court recognizes that some courts have adopted the EEOC's proposed procedure.  *See, e.g., EEOC v. Outback Steak House of Florida, Inc.*, 576 F.Supp. 2d 1202 (D. Colo. 2008); *EEOC v. Dial Corp.*, 259 F.Supp. 2d 710 (N.D. Ill. 2003).  However, in weighing the reasoning in those cases against the principles articulated in

13

*State Farm*, *Phillip Morris USA*, and *Allison*, the Court is unpersuaded by the EEOC's arguments. In the absence of Second Circuit[3] or Supreme Court[4] authority directly addressing the "punitives first" bifurcation procedure proposed here, the Court declines to adopt the EEOC's request to address punitive damages as part of the Stage I litigation. Punitive damages will be determined as part of the fact-specific individual determinations made in Stage II.

## **CONCLUSION**

For the reasons stated, the EEOC's motion to bifurcate trial and discovery is granted in part, but denied to the extent that it seeks a punitive damages determination at Stage I. The matter will be bifurcated into two stages as follows:

> Stage I will concern the production of personnel data necessary for statistical analyses of Sterling's policies and procedures, depositions of witnesses with knowledge relevant to the pattern or practice claims, such as managers familiar with Sterling's practices and policies, current or former employees who have experienced or witnessed discrimination, and statistical or other experts.

---

[3] Although not directly on point, the Second Circuit has expressed disapproval of aggregate class-wide damages determinations because such a procedure was likely to "result in an astronomical damages figure that [did] not accurately reflect the number of plaintiffs actually injured by defendants" and bore "little or no relationship to the amount of economic harm actually caused by defendants." *See McLaughlin v. American Tobacco Company*, 522 F.3d 215 231 (2d Cir. 2008).

[4] It is possible that the Supreme Court's highly-anticipated ruling in *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010), *petition for cert. granted*, 131 S.Ct. 795 (argued March 29, 2010), may provide some guidance on this issue. In the event that it does, the parties may request reconsideration of this ruling in light of that decision.

14

Should the trier of fact find liability regarding the pattern or practice claims, the Court will determine appropriate class-wide injunctive remedies. At that point, Stage II discovery will commence, to be followed by a Stage II trial.

Stage II discovery and trial will address issues concerning each class member's claim for relief, including whether Sterling can meet its burden of rebuttal as to each class member, and if not, the remedies to which that class member is entitled, including back pay, front pay, and compensatory and punitive damages, if any.


SO ORDERED.


                                        *s/ Richard J. Arcara*
                                    HONORABLE RICHARD J. ARCARA
                                    UNITED STATES DISTRICT JUDGE

DATED: April 25, 2011