UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,                                                      **DECISION AND ORDER**

                              Plaintiff,                          08-CV-00706(A)(M)

v.

STERLING JEWELERS INC.,

                              Defendant.

_____

           This case was referred to me by Hon. Richard J. Arcara for supervision of pretrial

proceedings, including preparation of a decision on non-dispositive motions [22].[1]  Before me are

the parties' cross-motions to compel [215, 218].  For the following reasons, the cross-motions are

granted in part and denied in part.


                                        **BACKGROUND**

           The Equal Employment Opportunity Commission ("EEOC") commenced this

gender discrimination action pursuant to Sections 706 and 707 of Title VII of the Civil Rights

Act of 1964, as amended (42 U.S.C. §§2000e-5(f)(1) and (3) and 2000e-6). The Complaint

alleges that "since at least January 1, 2003, Sterling [Jewelers Inc. ("Sterling")] has engaged in

unlawful employment practices throughout its stores nationwide . . . by maintaining a system for

making promotion and compensation decisions that is excessively subjective and through which

Sterling has permitted or encouraged managers to deny female employees equal access to

promotion opportunities and the same compensation paid to similarly situated male employees"

_____
[1]        Bracketed references are to the CM/ECF docket entries.

([1], ¶7(a)), and by "maintain[ing] a system for making promotion and compensation decisions

that is excessively subjective and that has a disparate impact on female retail sales employees".

Id., ¶8(a).

The parties agreed that this case, including discovery, should be bifurcated, but

were unable to agree whether punitive damages would be addressed during Stage I or Stage II.

In his April 25, 2011 Decision and Order [169], Judge Arcara agreed with Sterling that punitive

damages should be addressed during Stage II, and bifurcated this case as follows:

> "Stage I will concern the production of personnel data necessary
> for statistical analyses of Sterling's policies and procedures,
> depositions of witnesses with knowledge relevant to the pattern or
> practice claims, such as managers familiar with Sterling's practices
> and policies, current or former employees who have experienced or
> witnessed discrimination, and statistical or other experts.
>
> Should the trier of fact find liability regarding the pattern or
> practice claims, the Court will determine appropriate class-wide
> injunctive remedies. At that point, Stage II discovery will
> commence, to be followed by a Stage II trial.
>
> Stage II discovery and trial will address issues concerning each
> class member's claim for relief, including whether Sterling can
> meet its burden of rebuttal as to each class member, and if not, the
> remedies to which that class member is entitled, including back
> pay, front pay, and compensatory and punitive damages, if any."
> [169], pp. 14-15.

After Judge Arcara's decision, a dispute arose as to whether Stage I discovery

would include discovery into the EEOC's claim under §706 of Title VII of the Civil Rights

Act of 1964, as amended (42 U.S.C. §2000e-5).[2]  I concluded that conducting Section 706

discovery during Stage I was inconsistent with Judge Arcara's bifurcation order.  October 7,

2011 Decision and Order [199], p. 8.

Following these decisions and implementation of the Stage I  Discovery Plan and

Case Management Order [209], the parties continued to have discovery disputes.  After an

informal conference with the parties to resolve those disputes, I directed the parties to file

motions addressing the issues which could not be resolved [212].  These cross-motions ensued.


**ANALYSIS**

A.      **Sterling's Motion to Compel**

     1.      **Document Requests**

In response to Sterling's motion to compel, the EEOC states that it "has produced

all nonprotected portions of the investigative files for the nineteen charges underlying this action

and all other nonprivileged documents relating to Stage I issues".  EEOC's Brief [224], p. 7.

According to the EEOC, it has also "repeatedly . . . told Sterling that all nonprivileged materials

currently in its possession have been produced and that [it] will continue to produce additional

responsive and nonprivileged materials as they become available".  Id., p. 8.[3]  I find these

representations sufficient to render moot all aspects of Sterling's motion to compel directed at the

---

     [2]      "A §706 case is based on one or more individual charges or complaints of unlawful
discrimination by an employer, and a §707 is based on a pattern or practice of systemic discrimination by
an employer. . . . [B]oth a §706 case and a §707 case can be filed by the EEOC in its own name ". EEOC
v. Mitsubishi MotorManufacturing of America, Inc., 990 F. Supp. 1059, 1084 (C.D. Ill. 1998).

     [3]      The EEOC also has a continuing obligation to supplement its discovery responses
pursuant to Fed. R. Civ. P. ("Rule")  26(e).

EEOC's responses to its document requests, other than those challenging privilege designations or documents withheld on the basis that they relate to Stage II issues.

While Sterling argues that only a small number of the documents produced by the EEOC are responsive to its document requests (Sterling's Memorandum of Law [216], p. 5) "the discovery provisions of the Federal Rules are meant to function without the need for constant judicial intervention, and that those Rules rely on the honesty and good faith of counsel in dealing with adversaries". Hopei Garments (Hong Kong), Ltd. v. Oslo Trading Co., Inc., 1988 WL 25139, *3 (S.D.N.Y. 1988) (*citing* Penthouse International, Ltd. v. Playboy Enterprises, Inc., 663 F.2d 371, 390 (2d Cir.1981)). I have "no independent ability to determine whether or not [a party's] response was comprehensive and [it] cannot be required to 'prove a negative' by demonstrating that non-existent documents do not exist". Smith v. Life Investors Insurance Co. of America, 2009 WL 2045197, *5 (W.D.Pa. 2009).

Therefore, at this time I will rely on the EEOC's representations concerning its discovery production.[4] However, if Sterling "is able to develop evidence that this representation is incorrect, the Court will entertain an appropriate motion at that time". Id.

2.     **Privilege Log**

In April 2010, the EEOC moved for a protective order to strike Document Requests Nos. 3, 10-14, 16, 29-30 [109]. In support of its motion, the EEOC argued that these "requests . . . explicitly call for communications squarely protected by the attorney-client privilege, common interest privilege, work product doctrine, and the Mediation Agreement", and

---

[4]     The EEOC also has a continuing obligation to supplement its discovery responses pursuant to Rule 26(e).

that it "should not be required to respond to [these] improper discovery requests . . . even by

providing a privilege log". EEOC's Memorandum of Law [110], pp. 17, 21. In denying this

aspect of the EEOC's motion, I concluded that "[o]n their face, I do not find that the requests

seek only privileged material. If the EEOC believes that responsive documents are privileged, it

should - as it has done - produce a privilege log of these documents". July 15, 2010 Decision and

Order [139], p. 8.

   The parties disagree as to the scope of this ruling, prompting Sterling to argue that

the EEOC has improperly "lodged blanket objections of various types of privilege" as to these

requests. Sterling's Memorandum of Law [216], p. 10. Although I believe that my Order was

clear, to avoid any future confusion, my decision was not intended to overrule the EEOC's

privilege objections in their entirety. I was simply unwilling to conclude that on their face these

requests sought only privileged materials. Rather than striking the requests in their entirety, I

believed that it would be more prudent for the EEOC to identify responsive documents on its

privilege log and to address any disputes on a document-by-document basis. According to Ms.

Malloy's June 15, 2011 letter ([216-5]), this is what the EEOC has done, and as yet, Sterling has

not challenged any specific documents on the EEOC's privilege log as being improperly

withheld.

   Sterling's only specific objection is that "[s]everal documents listed on the

EEOC's amended privilege log relate to . . . 'Charging Party Information,'" and that it "is

entitled to production of this 'Charging Party Information' to the extent that the identities of the

persons referenced in those documents, along with relevant factual information therein, have not

yet been disclosed." Sterling's Memorandum of Law [216], pp. 10-11. The EEOC responds that

"it has amended its privilege log to clarify those entries" (EEOC's Brief [224], p. 7) and attaches its January 4, 2012 updated privilege log. Malloy Declaration [225], Ex. 11.[5]  Therefore, I deny this aspect of Sterling's motion at this time, without prejudice.[6]  To the extent that the EEOC's updated privilege log does not satisfy Sterling's concerns, including  its argument that the EEOC should produce redacted documents in lieu of withholding them in their entirety, Sterling may renew its motion with identification of specific documents at issue.  The EEOC's privilege log appears to also identify documents withheld on the grounds that they apply to Stage II discovery. Malloy Declaration [225], Ex. 11.  If Sterling wishes to make specific challenges to any of these designations, it may do so in a renewed motion.

Sterling also argues that the EEOC should be compelled to identify information redacted from document Nos. E000002736-2787 and 2853-2858 produced as part of  its December 2011 document production.  Sterling's Memorandum of Law [216], Point V. However, I am unable to address the propriety of these redactions without reviewing the documents.  Therefore, by May 25, 2012 the EEOC shall provide me with these unredacted documents for my *in camera*  review, along with an explanation (copied to Sterling) of why its redactions are proper.  Sterling may respond by June 1, 2012, and I will then decide that issue.

---

[5]        Sterling reserves its right to object to the content of this privilege log.  Sterling's Memorandum of Law [216], p. 11.

[6]        The EEOC alleges that this aspect of Sterling's motion seeks to compel "information it knows has not been withheld". EEOC's Brief in Opposition [224], p. 7.  This is of particular concern to me.  If either party seeks to compel discovery or opposes such a motion without substantial justification for doing so, I will consider to imposing appropriate sanctions.  *See* Rule 37(a)(5).

### 3.      Electronically Stored Information

Sterling argues that while its requests encompass electronically stored information ("ESI"), the EEOC "has not produced a single email, and it has produced only a handful of documents that appear to be print-outs from databases".  Sterling's Memorandum of Law [216], p. 14.  In response, the EEOC represents that it "has produced all nonprivileged emails from the investigation (there were approximately 20)".  Malloy Declaration [225], ¶93.  It explains that the "EEOC's 30(b)(6) witness testified, EEOC investigators maintain their files in paper; consequently, they print all emails and place them in the file. EEOC's witness also confirmed that that is what the investigators did in investigating these 19 charges and that the charge files are complete. The witness also testified that at the time of these investigations, most investigators communicated by mail.  That correspondence - like the emails - has been produced."  Id.

Sterling also argues that it "has asked the EEOC to confirm that it has searched the hard drives, network drives, e-mail accounts, personal digital assistants, and the like of relevant document custodians and preserved all electronic information contained therein", but that "the EEOC has not provided this confirmation".  Sterling's Memorandum of Law [216], p. 14.  The EEOC responds that it "has produced relevant ESI - in the form of spreadsheets, emails, and other electronic documents".  Malloy Declaration [225], ¶94.

Nowhere does the EEOC represent that it has searched its ESI for responsive documents. Nevertheless, it appears from its representations that all ESI would be included in its paper files.  I conclude that these representations are sufficient at the present time, and will not require the EEOC to undertake the substantial burden of confirming these representations by a search of its ESI.  However, if during the course of discovery, Sterling learns that the EEOC's

paper files may not contain the full extent of its ESI, it may renew this aspect of its motion.  In

the interim, the EEOC shall preserve any responsive ESI.


      **4.**     **Coordination of Discovery**

      The EEOC objects to at least one Sterling document request "on the grounds that

it is overbroad, duplicative, and unduly burdensome in that it seeks documents that Sterling

already has sought through its discovery in the private arbitration proceeding".  EEOC's

Responses to Sterling's First Set of Requests for Production of Documents [216-1], Request No.

20. Sterling responds that "the fact that similar information may be produced in private

arbitration proceedings does not in any way relieve the EEOC of its discovery obligations in this

action".  Sterling's Memorandum of Law [216], pp. 12-13.

      I agree with Sterling.  I previously denied the EEOC's motion to coordinate

discovery between this case and the arbitration.  Thus, to the extent that responsive discovery is

in the "possession, custody, or control" (consistent with the meaning of  this phrase under Rule

34(a)(1)) of the EEOC, it must either be produced or identified on its privilege log, irrespective

of whether it was produced to Sterling by the arbitration claimants in the arbitration. To avoid

any confusion as to the scope of the EEOC's production, the EEOC shall confirm in writing

whether its production thus far has included all documents in its possession, custody or control

and if not, it shall produce these documents or identify them on its privilege log.

### 5.      Interrogatory 1

Sterling's Interrogatory 1 requests the EEOC to "[i]dentify each person who provided information used to answer these interrogatories and/or each and every person who assisted in developing answers to these interrogatories", and to "identify the specific interrogatory number  or numbers for which that person provided information or assistance and describe the information or assistance provided".   EEOC's Supplemental Responses to Sterling's Interrogatories [216-2], p. 2. The  EEOC responded  that "EEOC attorneys and attorneys for the arbitration claimants assisted in preparation of EEOC's interrogatory responses."  Id.

Sterling argues that this response is insufficient because it "does not identify the particular attorneys, the specific Interrogatory number or numbers for which that person provided information or assistance, and it does not describe the information or assistance provided, as Sterling requested."  Sterling's Memorandum of Law [216], pp. 13-14, n.7.  Since the EEOC does not specifically respond to this aspect of Sterling's motion, I will grant this aspect of Sterling's motion.

### 6.      Interrogatory  16

Sterling's Interrogatory 16 asks the EEOC to identify the expert witnesses it intends to call at trial. EEOC's Responses to Sterling's Interrogatories Numbered 13-19 [216-2], p. 5.  The EEOC responds that "expert disclosures are not yet due" under the Case Management Order, and that since "Sterling has not produced workforce data to EEOC [, it] therefore has no admissible statistical compilations or data analyses to produce".  EEOC's Brief in Opposition

[224], p. 5.  It adds that "once Sterling produces workforce data for EEOC to provide to an expert, EEOC will be able to identify any testifying expert and serve its expert-related discovery by the deadline". Id.

Sterling cites Rule 26(a)(2)(B)(ii) in arguing that it is entitled to the disclosure of the information underlying the EEOC's testifying experts' opinions (Sterling's Memorandum of Law [216], p. 5). However, Rule 26(a)(2)(B)(ii) requires that this information be included in the EEOC's expert report.  Pursuant to the Stage I Discovery Plan and Case Management Order ([209]), which the parties jointly  proposed, the EEOC is not required to identify its expert witnesses and provide expert reports until December 14, 2012.  Id., ¶15.  The EEOC states that it "will disclose all information required by Rule 26(a)(2) by the Court-ordered deadline for expert discovery, including all facts or data considered by its testifying expert in forming his or her opinions." EEOC's Brief in Opposition [224], p. 12. Therefore, this aspect of Sterling's motion to compel is denied, without prejudice to renewal at a later date.


    **7.**    **Interrogatories 2-9, 11-15 and 18**

This aspect of Sterling's motion to compel can be divided into three parts: 1) challenging the sufficiency of the EEOC's identification of witnesses (Sterling's Memorandum of Law [216], pp. 5-6); 2) challenging the EEOC's objections that Sterling is seeking information beyond the scope of Stage I discovery (id., pp. 5-6); and 3) challenging the sufficiency of the responses and objections to those requesting the factual basis for the EEOC's pattern or practice claims (id., pp. 6-9).

### a.      Identification of Witnesses

Sterling's Interrogatory 2 asks the EEOC to "identify each and every person [it] believes has knowledge of any facts in anyway relating to any issue raised by the Complaint . . . providing [their contact information]; a detailed description of the knowledge believed to be possessed by each such person; all relevant issues or facts which each such person is believed to possess; and all documents, if any, which each such person is believed to have examined, has in his or her possession or has knowledge." EEOC's Responses to Sterling's First Set of Interrogatories [216-2], pp. 2-3. In response, the EEOC asserts a litany of objections, including that the interrogatory "seeks information and documents that are beyond the scope of issues relevant to Stage I discovery". Id., p. 3. Notwithstanding these objections, the EEOC notes that "potentially any and all current and former employees and managers of Sterling" may be responsive to the Interrogatory, but specifically identifies 131 individuals in addition to the 25 individuals named in its initial disclosure. Id., pp. 3-7. Of these individuals, the EEOC alleges that 114 have provided declarations detailing their knowledge of the claims in this case. Id. For the balance of the individuals identified, including the 19 charging parties, it has produced the nonpriviledged portions of its investigative files. Id., p. 3; EEOC's Brief in Opposition [224], p. 6.

Sterling argues that the EEOC has "cherry-picked" those witnesses it intends to call as Stage I witnesses. Sterling's Memorandum of Law  [216], p. 5. However, the EEOC has represented that it "is not withholding the identity of any witnesses with discoverable information about Stage I issues", and will continue to identify Stage I witness and relevant documents from Stage I witnesses as discovery progresses (EEOC's Brief in Opposition [224], p. 6). At this time,

that representation is sufficient to moot this aspect of Sterling's motion. *See* <u>Smith</u>, 2009 WL 2045197 at *5.

### b.      Stage I Discovery

Sterling argues that the EEOC's objections that the information it seeks is beyond the scope of Stage I discovery "should be overruled", and that it "should be ordered to supplement its responses to Interrogatories Nos. 2-9, 11-15 and 18". Sterling's Memorandum of Law [216], p. 6.[7] It also seeks "an Order compelling the EEOC . . . to identify all persons whom the EEOC believes have knowledge of any facts relating to any issue raised by the Complaint and to state the substance of their knowledge". <u>Id</u>. (*citing* Interrogatory 2).

Notwithstanding my ruling that conducting Section 706 discovery during Stage I was inconsistent with Judge Arcara's bifurcation order ([199], p. 8), Sterling continues to seek discovery regarding "*any* issued raised by the Complaint" (*see, e.g.*, Interrogatories 2, 5) and asks the EEOC to identify witnesses with knowledge of "any facts relating to *any* issue raised by the Complaint". Sterling's Memorandum of Law [216], p. 6. On their face, these requests would appear to include discovery into the Section 706 allegations of the Complaint [199].

By contrast to the bifurcated framework here, Sterling relies on <u>Serrano v. Cintas Corp</u>., 2010 WL 3789690 (E.D. Mich 2010) (Sterling's Memorandum of Law [216], p.6), which was not bifurcated into Stage I and Stage II discovery and did not include a  Section 707 pattern

---

[7]      The EEOC's responses to Interrogatories 4, 9, 12-14, and 18 do not raise the objection that they seek discovery beyond the scope of Stage I.

or practice claim.  *See* <u>Serrano v. Cintas Corp.</u>, 711 F.Supp.2d 782, 784 (E.D.Mich. 2010),

<u>motion to certify appeal denied</u>, 2010 WL 940164. [8]

       I recognize that Stage I and Stage II discovery may not readily be

compartmentalized, since "[i]n proving pattern and practice liability . . . the EEOC, usually

rel[ies] on individual testimony concerning specific instances of discrimination (so-called

'anecdotal evidence'), statistical data and expert opinions concerning statistical data". <u>EEOC v.</u>

<u>Carrols Corp.</u>, 215 F.R.D. 46, 50 (N.D.N.Y. 2003). However, as noted by the EEOC, a number of

Sterling's interrogatories clearly seek Stage II discovery by requesting information concerning

damages. *See e.g.*, Interrogatory 6 ("For each allegedly injured individual for whom the EEOC

seeks back pay damages, identify . . . the amount of back pay sought, and the computations

leading to such an amount"); Interrogatory 7 ("For each current or former employee of Defendant

who you contend Defendants [sic] failed to promote because of gender . . . state the amount of

back pay and other damages the EEOC seeks on behalf of each such individual"); Interrogatory 8

("For each current or former employee of Defendant who you contend was deterred from

applying for a promotion with Defendant . . . state the amount of back pay and other damages the

EEOC seeks on behalf of each such individual"); and Interrogatory 11 ("If the EEOC knows of

any statements made by any individuals concerning Plaintiff's claims of discrimination . . . or the

---

[8]    In my July 15, 2010 Decision and Order ([139]) I relied on <u>Serrano v. Cintas</u>, 2010 WL 746430 (E.D. Mich. 2010) in concluding that, with respect to Interrogatory 3, "Sterling is not entitled to know how the EEOC identified the individuals that were allegedly discriminated against as protected work product, but that it is entitled to the identity of these individuals". <u>Id</u>., p. 9. To the extent this aspect of that Decision and Order is inconsistent with to Judge Arcara's April 25, 2011 Decision and Order bifurcating  the case [169] and with my October 7, 2011 Decision and Order [199] addressing bifurcation, the later decisions control.

damages caused therefrom"). Therefore, I see no reason to overrule the EEOC's objections that Sterling is  requesting information beyond Stage I discovery with respect to these interrogatories.

However, I reach a different conclusion with respect Interrogatories 3 and 15. Interrogatory 3 asks the EEOC to "[d]escribe in detail [its] efforts . . .to determine the identities of any current or former employee of Defendant who was paid less than male counterparts . . . and who purportedly were denied and/or did not receive a promotion or pay increase due to their gender." EEOC's Responses to Sterling's First Set of Interrogatories [216-2], Ex. B, p. 7. I fail to see how the identification of efforts used  to locate current or former employees has anything to do with Stage II discovery.

Interrogatory 15 asks the EEOC to "[i]dentify all legal or administrative proceedings (including, but not limited to, civil actions, criminal actions, and charges of discrimination) to which [31 current and former female employees of Sterling] ha[ve] been a party".  EEOC's Responses to Sterling's Interrogatories Numbered 13-19 [216-2], p. 4. As discussed above, anecdotal evidence of discrimination may be used in proving pattern or practice liability. *See* EEOC v. Carrols Corp., 215 F.R.D. at 50. These proceeding may include anecdotal evidence of discrimination that could be used in proving pattern or practice liability. Thus, unless the EEOC confirms that it will not rely on such evidence in establishing its pattern or practice claim, I am unable to sustain the EEOC's objection.

c.     **Basis of the EEOC's Claims**

Sterling argues that "[p]resumably, the EEOC had a factual basis for bringing [its] specific allegations before filing its Complaint", and that Interrogatories 9 and 18, "merely ask[]

the EEOC to take a stand and identify that information".  Sterling's Memorandum of Law [216], pp. 6-7.

- **Interrogatory 9** asks the EEOC to "[i]dentify all 'system[s] for making promotions and compensation decisions' the EEOC claims are 'excessively subjective' and which EEOC claims Defendant utilized to permit or encourage gender discrimination."  EEOC's Responses to Sterling's First Set of Interrogatories [216-2], p. 12.

- **Interrogatory 18** asks the EEOC to "explain in detail [its] basis for claiming [in paragraph 10 of the Complaint] that any alleged 'unlawful employment practices complained of in paragraphs 7-8 [ ] were and are intentional'". EEOC's Responses to Sterling's Interrogatories Numbered 13-19 [216-2], p. 6.

With respect to Interrogatories 5, 9, 13, and 14, Sterling also argues that "[t]o test the EEOC's allegation that Sterling had a systematic practice of discriminating on the basis of sex . . . the EEOC must provide information in the EEOC's possession regarding Sterling's pay practices for its male employees, as the time has come for the EEOC to explain how in intends to prove its case and what facts support its lawsuit". Sterling's Memorandum of Law  [216], p. 8.

- **Interrogatory 5** asks the EEOC to "describe in detail the discriminatory treatment [each allegedly injured individual identified in response to Interrogatory 4] experienced, identifying each incident of alleged discrimination, the agent of Defendant who you contend made the discriminatory decisions".  EEOC's Responses to Sterling's First Set of Interrogatories [216-2], pp. 8-9.

- **Interrogatory 13** asks the EEOC to produce a variety of information for Sterling's male employees who were allegedly paid higher wages than their similarly situated female counterparts. Id., pp. 14-15.

- **Interrogatory 14** asks the EEOC to "[i]dentify any current and/or former female employees whom Plaintiff is aware received a pay raise and/or promotion during her employment with Defendant and identify any circumstances surrounding that pay raise and/or promotion of which Plaintiff is aware". Id., p. 15.

Without identifying which interrogatories it is referencing, the EEOC argues that "Sterling has served contention interrogatories on EEOC that would require EEOC to set forth every fact and piece of evidence that EEOC's attorney's believe is relevant", and that "[n]umerous courts have held that interrogatories such as these '. . . are inherently improper'". EEOC's Brief in Opposition [224], p. 12 (*quoting* Clean Earth Remediation & Construction Services, Inc. v. American International Group, Inc., 245 F.R.D. 137  (S.D.N.Y. 2007)). "Contention interrogatories ask a party: to state what it contends; to state whether it makes a specified contention; to state all the facts upon which it bases a contention; to take a position, and explain or defend that position, with respect to how the law applies to facts; or to state the legal or theoretical basis for a contention. . . .   However, questions seeking the identification of witnesses or documents are not contention interrogatories." B. Braun Medical Inc. v. Abbott Laboratories,  155 F.R.D. 525, 527 (E.D.Pa. 1994).

It appears that at least some of Sterling's interrogatories may be considered contention interrogatories seeking identification of facts upon which  the EEOC bases its claims. The EEOC argues that this type of  "contention interrogatory, if appropriate at all, should be answered at the end of discovery".  EEOC's Brief in Opposition [224], p. 15. "Courts will . . . often defer ordering answers to contention interrogatories until the end of discovery and a requesting party will be required to show how an earlier response assists the goals of discovery such as exposing a substantial basis for a motion under Fed.R.Civ.P. 11 and 56." Brown v. United States, 179 F.R.D. 101, 105 (W.D.N.Y. 1998)(Foschio, M.J.). *See* Rule 33(a)(2) ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be

answered until designated discovery is complete, or until a pretrial conference or some other time"); Roth v. Bank of Commonwealth, 1988 WL 43963, *5 (W.D.N.Y. 1988) (Elfvin, J.) ("This Court finds that twenty-four of the forty-eight interrogatories are contention interrogatories and need not be answered until the substantial completion of pretrial discovery").

   Considering that the exchange of discovery is at a relatively early stage and remains ongoing, at this time, I will sustain the EEOC's objections to these interrogatories as being premature or seeking information currently in Sterling's own control.  However, I will not attempt to guess which interrogatories the EEOC believes are contention interrogatories, and since Sterling did not have the opportunity to reply to the EEOC's argument that these constitute improper contention interrogatories, I am reluctant to address whether Sterling has asked any improper contention interrogatories.  If the EEOC does not supplement its response to these interrogatories as discovery progresses, including those allegedly directed at the EEOC's investigation before filing the Complaint, Sterling may renew its motion to compel, and at that time I will address whether Sterling's contention  interrogatories are permissible.

   Therefore, this aspect of Sterling's motion is denied, without prejudice to renewal.

**B.  The EEOC's Motion to Compel**

   **1. Interrogatories 2 and 3**

   There are two interrogatories in dispute.  The EEOC's Interrogatory 2 asks Sterling to "[i]dentify each employee who worked for Sterling in retail operations at any time during the relevant time period" and to provide their contact information, social security number,

employee number, position, store number(s) where the employee worked, sex, date of hire and

termination/resignation and reason for termination/resignation. Malloy Declaration [219], Ex. 4,

p. 5.  The EEOC has indicated that this request is intended "to cover all positions in retail

operations . . . includ[ing] sales associates, store managers and assistant managers, district

managers, and regional managers". Sterling's Opposing Brief [223], Ex. 1, pp. 1-2.  Sterling

objected to this interrogatory as being overly broad, unduly broad, and seeking information not

reasonably calculated to lead to the discovery of admissible evidence.  Malloy Declaration [219],

Ex. 9, p. 4. It also objected that the production of complete addresses, telephone numbers, social

security numbers, and reasons for termination/resignation are of a "highly personal and

confidential nature" and  "legally protected from disclosure".  Id, pp. 4-5.  The EEOC has since

clarified that it is not asking Sterling to identify current managers (id., p. 2) and that it is

requesting this information from January 1, 2000 to the present.  EEOC's Brief in Support [220],

p. 2.

Interrogatory 3 asks Sterling to "[i]dentify each person who has relevant

knowledge concerning any claim, defense, allegation, denial, or contention in this action, and for

each person identified, describe the substance of that person's knowledge."  Malloy Declaration

[219], Ex. 4, p. 6. Sterling objected to his request, but nevertheless identified 107 "complaining

parties", including their city and state of residence.  Id., Ex. 9, pp. 5-10.  It has also identified

Sterling personnel by name and title and has more generally identified categories of Sterling

employees, including "district , general and/or store managers", "regional vice presidents" , and

"certain employees of the EEOC (including its investigators)".  Id., pp. 10-11.  Sterling's

interrogatory response to Interrogatory 3 also states that the its "personnel may be contacted

through . . . counsel" Id.

      "'It is plain that the scope of discovery through interrogatories and requests for

production of documents is limited only by relevance and burdensomeness, and in an EEOC case

the discovery scope is extensive.'" EEOC v. University of Phoenix, Inc., 2007 WL 1302578, *3

(D.N.M. 2007) (quoting Rich v. Martin Marietta Corp., 522 F.2d 333, 343 (10th Cir.1975)).  As

a threshold issue, the parties dispute which party bears the burden of proof of establishing

relevance.  The EEOC cites cases holding that  "[a] party resisting discovery has the burden of

showing 'specifically how, despite the broad and liberal construction afforded the federal

discovery rules, each interrogatory is not relevant or how each question is overly broad,

burdensome or oppressive, . . . by submitting affidavits or offering evidence revealing the nature

of the burden'" (Arias-Zeballos v. Tan, 2007 WL 1599150, *2 (S.D.N.Y. 2007), quoted in

EEOC's  Brief in Support [220], p. 3), whereas Sterling cites authority that as the proponent of

the request, the EEOC bears the burden of showing relevance (Sterling's Brief in Opposition

[223], pp. 4-5, citing EEOC v. Supervalu, Inc., 2010 WL 5071196, *2 (N.D.Ill. 2010)).

      Although I acknowledge the authority cited by the EEOC, I believe that the

prevailing view is that "[t]he burden of demonstrating relevance is on the party seeking

discovery."  Lent v. Signature Truck Systems, Inc., 2010 WL 1707998, *2 (W.D.N.Y. 2010)

(Scott, M.J.). It is only "[w]here . . . the documents are relevant, [that] the burden is upon the

party seeking non-disclosure".  Penthouse International, Ltd., 663 F.2d at 391.

      The scope of discovery is broad, and the information sought by the EEOC is

considered relevant so long as it "appears reasonably calculated to lead to the discovery of

admissible evidence". Rule 26(b)(1).   The EEOC argues that this information is relevant since it "needs to interview current and former employees to discover anecdotal evidence necessary to prove its claims that Sterling has engaged in widespread discrimination". EEOC's Brief in Support [220], pp. 8-9.  I agree with the EEOC.

"The EEOC is charged with investigating pattern and practice claims and, in order to do so, needs access to relevant employees." EEOC v. Morgan Stanley & Co., Inc.,  2002 WL 31108179, *1 (S.D.N.Y. 2002); EEOC v. Lexus Serramonte, 2006 WL 2329510, *2 (N.D.Cal. 2006), objections overruled, 2006 WL 2567878 ("A court may reasonably order a defendant to provide contact information, including telephone numbers and addresses for its employees from the relevant class period").  "Defendant has access to this information, and plaintiff should have the same access." Babbitt v. Albertson's, Inc., 1992 WL 605652, *6 (N.D.Cal. 1992) (permitting class certification discovery to include the production of the names, addresses, telephone numbers and social security numbers of current and past employees since 1985).

Sterling argues that "the EEOC's request is based on the theoretical possibility that some employees might have relevant information" and thereby "amounts to an improper fishing expedition."  Sterling's Opposing Brief [223], p. 5.  I disagree. "The EEOC is not fishing. Rather, the EEOC is pursuing its congressional mandate to enforce Title VII through the pursuit of litigation, including, relevant discovery that would support its litigation. Without basic identifying information such as addresses, the EEOC cannot locate potential witnesses. . . . Further, there may be additional employees, whom [the claimant]  does know or has not identified, who either experienced or witnessed . . . discrimination . . . and the EEOC is entitled

to discovery regarding those individuals." EEOC v. University of Phoenix, Inc., 2007 WL
1302578 at *6.[9]

I also agree with the EEOC that its ability "to contact potential witnesses is
meaningless if [it] does not have contact information for employees and former employees".
EEOC's Brief in Support [220], p. 9. See EEOC v. University of Phoenix, Inc., 2007 WL
1302578 at *6 ("if any of the witnesses have moved since being employed . . . , finding them
without identifiers such as social security numbers and dates of birth may be significantly more
difficult and expensive").  To the extent Sterling has "privacy concerns" about the production of
social security numbers, the EEOC has agreed that this information would be protected under the
Confidentiality Order. EEOC's Brief [220], p. 9 n. 2.

Since the EEOC has demonstrated that the information sought is relevant, the
burden shifts to Sterling to show why disclosure is not warranted.  It argues that "the burden  . . .
to provide this broad universe of information for so many individuals over such a long period of
time outweighs the potential relevance it has to the litigation. The EEOC's request encompasses
approximately 75,000 employees, and workforce data for some of those individuals was purged
prior to the institution of the EEOC's proceedings and recovering and producing that data would
add additional burdens to Sterling." Sterling's Brief in Opposition [223], p. 6.  Despite its claims

---

[9]       Compare with US EEOC v. ABM Industries Inc., 2008 WL 5385618, *8  (E.D.Cal.
2008) ("It appears to the Court that the only purpose of statewide discovery at this point, would be to
allow Plaintiffs to search for other employees with colorable claims, with no factual nexus other than the
fact that they do or did work for Defendants. In the Court's view, this would constitute a 'fishing
expedition' and an inappropriate use of discovery").

of burden, according to Michael D. Lynch, Sterling's Vice President of Employee Relations, Sterling "has compiled and prepared for production workforce data dating back to January 1, 2001", but that producing records back to January 1, 2000 would be additionally burdensome "as the information was purged and may not be recoverable". [223-3], ¶10.[10]

Sterling's claims of undue burden are also difficult to reconcile with the fact that it has *already* compiled the information responsive to EEOC's interrogatories to January 1, 2001. To the extent it has done so, this information shall be produced. It is not clear to me whether the workforce data compiled by Sterling covers the full extent of data requested by the EEOC (*e.g.*, the reason for termination/resignation and contact information). Should this production not satisfy the full breadth of information sought by the EEOC, it may renew its motion.

While the information compiled by Sterling does not cover the full time frame requested by the EEOC, if the EEOC "cannot establish a pattern or practice . . . during that time frame, it is doubtful that an additional [period] of information will get the job done." EEOC v. CRST Van Expedited, Inc., 2009 WL 395211, *3 (N.D.Iowa 2009) (requiring production of sexual harassment complaints for a period of 45 1/2 months, but denying an additional three months of information).

Therefore, at this time I will not require Sterling to undertake the additional burden of attempting to compile responsive information from January 1, 2000 to January 1, 2001.

---

[10]     While Mr. Lynch's declaration does not address why this data was compiled, Arbitrator Roberts has ordered Sterling to produced the data. Malloy Declaration [219], ¶40. While the effect of producing the work force data in the AAA arbitration of Jock, et al. v. Sterling Jewelers, Inc. may have may have been to moot Sterling's arguments of undue burden, this should not be construed as reconsideration of my decision ([97]) denying coordination of discovery between this case and the arbitration. Sterling's Opposing Brief [223], p. 16.

However, if the EEOC can demonstrate a particularized need for obtaining  information dating

back to 2000, it may renew its motion for this production.

   2.   ***Ex Parte* Interviews with Former Employees and Current Nonmanagerial
        Employees**

        While the EEOC disputes Sterling's ability to require it to contact its employees

through Sterling's counsel (EEOC's Brief in Support [220], p. 13), Sterling argues that the

EEOC has never conferred with it about this issue before raising it in its motion, and "requests an

opportunity to be heard after conferring with the EEOC on this issue". Sterling's  Brief [223], p.

9.  Without the benefit of Sterling's substantive response to EEOC's argument, it does seem that

*ex parte* interviews with certain classes of Sterling's employees may be  justified.  *See* Judd v.

Take-Two Interactive Software, Inc., 2008 WL 906076, *1  (S.D.N.Y. 2008) ("As a general rule,

a party cannot prevent an adverse party from conducting *ex parte* interviews with its former

employees"); Chambers v. Capital Cities/ABC, 159 F.R.D. 441, 443 (S.D.N.Y. 1995)("Where *ex*

*parte* interviews with current employees are permitted, only non-managerial personnel are

usually allowed to be so interviewed").

        Nevertheless, I agree with Sterling that the EEOC's motion is premature, and deny

this aspect of the EEOC's motion on this basis, without prejudice to renewal following further

discussion between the parties.

   3.   **Redactions**

        The EEOC argues that Sterling has "redacted relevant information from numerous

documents", and seeks an order requiring "Sterling to produce unredacted versions of all

documents".  EEOC's Supporting Brief [220], pp. 15, 17.  However, it expressly identifies only

one redacted document (Malloy Declaration [219], Ex. 22) which it has submitted to me under seal pursuant to the Confidentiality Order. Id., p. 16.

Given the limited nature of what is before me, I am in no position to address the propriety of all of Sterling's redactions. With respect to Exhibit 22, Sterling argues that by submitting it "*in camera*",[11] the EEOC has "deprived Sterling of the opportunity to analyze them and explain to the Court the basis for the redactions". Sterling's Brief in Opposition [223], p. 14. Sterling asks that if I am "inclined to consider the documents improperly submitted by the EEOC", that it be afforded the "opportunity to address the issue". Id.

Although I am not certain what Sterling will argue that it has not already argued or could have argued,[12] out of an abundance of caution I will provide Sterling with a brief opportunity to provide me with an unredacted copy of Exhibit 22 for my *in camera* review and to respond to this aspect of the EEOC's motion to compel. This shall be accomplished by May 25, 2012. In the interim, this may also provide the EEOC with the opportunity to identify with particularity any additional redactions it is challenging.

---

[11]     I question why Sterling would not have had an opportunity to review the exhibit when it produced it to the EEOC. Thus, Sterling's argument that the EEOC had an obligation to put it on notice of the submission appears misplaced. *See* Sterling's Opposing Brief [223], p. 13, *citing* Parisi v. Rochester Cardiothoractic Associates, 159 F.R.D. 406, 407 (W.D.N.Y. 1995)(Fisher, M.J.) (addressing an *in camera ex parte* review)).

[12]     It appears that the EEOC has not complied with the Confidentiality Order which requires that any party seeking to use Confidential Information in a court filing "must give the Producing Party at least ten . . . business days advance notice of its intent" to permit them to move for a protective order or to seal ([206], ¶16). *See* Maatman Declaration [223-4], ¶6. Nevertheless, this is a nullity because by filing the exhibit under seal, the EEOC has preserved its confidentiality, and Sterling has since filed a motion seeking to maintain this document under seal [229].

4.        **Self-Critical Analysis**

The EEOC argues that "[i]n response to a number of document requests and in its privilege log, Sterling has asserted a 'self-critical analysis privilege'", which has not been recognized in the Second Circuit as a matter of federal law.  EEOC's Brief [220], p. 22. Alternatively, it argues that at best, this has been recognized as a qualified privilege, but that "Sterling has made no effort to show that it would even apply".  Id. at p. 23.

"The self-critical analysis privilege is 'a qualified privilege that protects from disclosure documents reflecting a party's own forthright evaluation of its compliance with regulatory, legal or professional standards.' . . .  'Where a party has conducted a confidential analysis of its own performance in a matter implicating a substantial public interest, with a view towards correction of errors, a recognized self-critical analysis privilege may relieve the party of its obligation to provide the purely analytical material, absent a showing of need by the other side, in order to encourage continued candid self-evaluations.'" Robinson v. Troyan, 2011 WL 5416324, *4 (E.D.N.Y. 2011) (quoting In re Winstar Communications, Securities Litigation, 2007 WL 4115812, *1 (S.D.N.Y.  2007)).  However, this privilege is "not universally recognized".  In re Winstar Communications, Securities Litigation, 2007 WL 4115812 at *1. "Although some federal courts have recognized a self-critical analysis privilege, its continuing viability is an open question." Ovesen v. Mitsubishi Heavy Industries of America Inc.,  2009 WL 195853, *2 (S.D.N.Y. 2009).

Interpreting the Supreme Court's decision in University of Pennsylvania v. EEOC, 493 U.S. 182, 189 (1990) (which rejected a 'peer-review' privilege) as "implicitly reject[ing] the rationale for a self-evaluation privilege", and relying on the fact that no Circuit Courts, including

the Second Circuit, have accepted the privilege, this court has rejected the self-evaluation privilege. *See* Roberts v. Hunt, 187 F.R.D. 71, 75-76 (W.D.N.Y. 1999) (Foschio, M.J.); Robbins & Myers, Inc. v. J.M. Huber Corp., 2003 WL 21384304, *4 (W.D.N.Y. 2003)(Elfvin, J.)("This Court declines to recognize the privilege of self-critical analysis at this time", *citing* Robinson v. United States, 205 F.R.D. 104, 108–109 (W.D.N.Y. 2001) (Curtin, J.) (noting that the self-critical analysis privilege has not been adopted by the Second Circuit Court of Appeals and has been rejected in this district)).[13]

As Magistrate Judge Foschio explained in Roberts (187 F.R.D. at 76), "it is not reasonable to believe that organizations will not comply with employment discrimination laws unless independent surveys revealing potential violations are deemed privileged. As noted, organizations have a self-interest in achieving compliance with the law and social expectations. Managers need only to scrutinize their workforce to determine if there are indications of potential discrimination. Governmental agencies have no less an incentive to promote equal opportunity in the workplace."

I recognize that a number of decisions from the Southern District of New York have recognized the existence of this privilege. *See e.g.*, Robinson, 2011 WL 5416324 at *4; In re Winstar Communications, Securities Litigation, 2007 WL 4115812 at *1. However, even those courts "have found that it is a qualified, not absolute, privilege". Francis v. United States, 2011 WL 2224509, *7 (S.D.N.Y. 2011). "At a minimum, the party invoking the privilege must demonstrate that 'the information . . . result[ed] from a critical self-analysis undertaken by the

---

[13]     In Robinson, a tort case, Judge Curtin ultimately treated it as a qualified privilege and analyzed the documents *in camera*. 205 F.R.D. at 110.

party seeking protection; [that] the public [has] a strong interest in preserving the free flow of the type of information sought; [and that] the information [is] of the type whose flow would be curtailed if the discovery were allowed.' Note, 'The Privilege of Self–Critical Analysis,' 96 Harv. L.Rev. 1083, 1086 (1983). Furthermore, the documents at issue must be purely evaluative, . . . and must have been prepared and retained on a confidential basis." Wimer v. Sealand Service, Inc., 1997 WL 375661, *1 (S.D.N.Y. 1997).

Even if I were to recognize the critical self-analysis privilege, Sterling has not established that it should apply here.  It merely argues that "[i]f efforts made to investigate and remediate alleged employment discrimination are subject to discovery in subsequent litigation, it will have a chilling effect on such investigations and remedial efforts." Sterling's Brief in Opposition [223], p. 15.  This plainly is insufficient to meet Sterling's burden of establishing the applicability of this privilege.  Therefore, this aspect of the EEOC's motion is granted.

## CONCLUSION

### Sterling's Motion to Compel

For these reasons, Sterling's motion to compel ([215]) is granted to the extent it seeks 1) to overrule the EEOC's objection to Sterling document requests as seeking documents Sterling has already sought through its discovery in the arbitration proceeding,  2) to overrule  the EEOC's  objections to interrogatories 3 and 15 as being beyond the scope of Stage I discovery, and 3) to compel a complete response to Interrogatory 1; but  it is denied to the extent it seeks 1) to compel further responses to its document requests, including the production of ESI,  2) to compel an amended privilege log,  and 3) to compel supplemental responses to Interrogatories 2,

4-9, 11-14, and 18, without prejudice to renewal.  I reserve decision on that aspect of the motion

challenging the EEOC's redactions ([216], Point V) pending my *in camera* review of the

unredacted documents and the parties' supplemental submissions.

    Based upon these rulings, by May 25, 2012: 1) the EEOC shall supplement its

response to Interrogatory 1; 2) the EEOC shall supplement its responses to Interrogatories 3 and

15, if necessary, to the extent its objections have been overruled; 3) the EEOC shall confirm in

writing whether its production thus far has included all documents in its possession, custody or

control and if not, the EEOC shall produce these documents or identify them on its privilege log;

and 4) the EEOC shall produce to me for my *in camera* review unredacted copies of document

Nos. E000002736-2787 and 2853-2858, and may accompany this production with a written

explanation (with a copy to Sterling) as to why its redactions are proper, and Sterling may

respond in writing by June 1, 2012.


### EEOC's Motion to Compel

    The EEOC's motion to compel ([218]) is granted to the extent that it seeks 1)

Sterling to produce the workforce data  it has compiled dating back to January 1, 2001, and 2) to

overrule Sterling's reliance on the self-critical analysis privilege;  but it is denied to the extent

that it seeks to conduct *ex parte* interviews with Sterling's former employees, without prejudice

to renewal.   I reserve decision on that aspect of the motion challenging Sterling's  redactions

([218], pp. 15-16) pending my *in camera* review of the unredacted documents and the parties'

supplemental submissions.

Based upon these rulings, by May 25, 2012 Sterling shall 1) produce the workforce data it has compiled to the EEOC; and 2) produce for my *in camera* review an unredacted version of Exhibit 22 and may accompany this production with a written explanation (with a copy to the EEOC) as to why its redactions are proper, and the EEOC may respond in writing by June 1, 2012.

**SO ORDERED.**

Dated: May 14, 2012

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge