UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

EQUAL EMPLOYMENT OPPORTUNITY      **REPORT, RECOMMENDATION**
COMMISSION,     **AND ORDER**

                          Plaintiff,

v.                                                  08-CV-00706(A)(M)

STERLING JEWELERS INC.,

                          Defendant.
_____

Before me are two motions by defendant Sterling Jewelers, Inc. ("Sterling"): a motion for partial summary judgment [336],[1] and a motion to strike portions of the Statement of Facts of plaintiff Equal Employment Opportunity Commission ("EEOC") [370]. Oral argument was held on December 9, 2013 [376]. For the following reasons, Sterling's motion to strike is denied as moot, and I recommend that its motion for partial summary judgment be granted in part and denied in part.

## BACKGROUND

Between May 2005 and November 2006, 19 female employees (the "Charging Parties") at Sterling's stores in New York, Florida, California, Massachusetts, Missouri, Nevada, Indiana and Texas filed charges with the EEOC against Sterling on behalf of themselves and similarly situated employees, alleging sex discrimination in pay and/or promotions. EEOC's Brief [362], p. 1. The charges were investigated by five EEOC investigators. [376], p. 12. By

---

[1]     Bracketed references are to CM/ECF docket entries.

June 2007, the charges were transferred to the EEOC's Buffalo office, and were assigned to a single investigator, David Ging. EEOC's Brief [362], p. 1.

On January 25, 2007 the EEOC, Sterling and the Charging Parties entered into a "Mediation and Confidentiality Agreement" calling for the EEOC's participation in a mediation between Sterling and the Charging Parties. [365-13], pp. 2 of 22 *et seq*. That Agreement provided that "the Parties shall not rely on, or introduce as evidence in any court, arbitration, judicial, or other proceeding any information disclosed by any other party, their experts, or by the Mediator regarding such other party in the course of or pursuant to the mediation". Id., ¶10.

During the mediation, counsel for the Charging Parties submitted a statistical analysis of Sterling's pay and promotion data prepared by their expert, Dr. Louis Lanier, dated September 4, 2007 and bearing the legend "For Settlement Purposes Only" [339-32]. The parties subsequently modified the Mediation and Confidentiality Agreement to provide that the "EEOC may place Dr. Lanier's tables and explanatory notes in its investigatory file. However, such tables shall not lose their mediation privilege". [365-13], p. 10 of 22, ¶4.

In November 2007, Mr. Ging wrote to counsel for the Charging Parties and Sterling, stating:

> "I have been informed by [EEOC] Regional Attorney Elizabeth Grossman that the outside mediation process regarding the above-referenced charges has been on unsuccessful. I understand that Ms. Grossman has [Sterling's] permission to provide me its documents exchanged in conjunction with the mediation which are numbered 0001-3348. I further understand that Ms. Grossman has Charging Parties' and [Sterling's] permission to provide me with Dr. Lanier's tables and explanatory notes prepared in conjunction with the mediation.

> Ms. Grossman has agreed that Dr. Lanier's analysis in the underlying data shall not lose its mediation privilege and will not be disclosed to any non-Charging Party.
>
> While the Commission will not be making additional requests for information, both parties are encouraged to provide any further information you wish to be considered by the Commission to me by November 21, 2007."

[363-1], pp. 36-37 of 189.

Although Sterling did not provide any additional information in response to that invitation,[2] on November 30, 2007 counsel for the Charging Parties wrote to Mr. Ging, stating that "[o]ur clients and other women similarly situated to them claim they have been subjected to a pattern and practice of sex discrimination in compensation and promotion decisions at Sterling Jewelers stores. This letter and accompanying exhibits set forth the factual, legal and statistical support of the Charging Parties' claims. We hope this information is helpful to your investigation". [363-1], p. 71 of 189. However, Mr. Ging did not recall having received this letter ([339-24], pp. 187-88), and when asked whether he reviewed it as part of his investigation into the charges against Sterling, he replied "I can't be sure that I did". Id., p. 188.

On January 3, 2008 the EEOC issued a Letter of Determination, stating:

> "The investigation determined that Respondent subjected Charging Parties and a class of female employees with retail sales responsibilities nationwide to a pattern or practice of sex discrimination in regard to promotion and compensation. Statistical analysis of pay and promotion data provided by Respondent reveals that Respondent promoted male employees at a statistically significant, higher rate than similarly situated female employees and that Respondent compensated male employees at a

---

[2] The parties had agreed that "Sterling shall be under no obligation to provide additional information or documentation relating to the Charges" in connection with the EEOC administrative investigation. [365-13], ¶8.

>statistically significant, higher rate than similarly situated female employees. Witness testimony further corroborates the allegations."

[339-34], p. 4.

The EEOC commenced this action on September 23, 2008, alleging that "[s]ince at least January 1, 2003, Sterling has engaged in unlawful employment practices throughout its stores nationwide" by discriminating against female employees in promotion and compensation, in violation of Title VII, 42 U.S.C. §§2000e-2(a) and 2000e-2(k). Complaint [1], ¶¶7, 8.  It seeks relief for 19 individual employees (the "Charging Parties") as well as for "other female retail sales employees".  Id., ¶6; "Prayer for Relief", ¶¶C-F.

In moving for partial summary judgment, Sterling argues that since there is no evidence that the EEOC conducted a nationwide investigation of its employment practices prior to commencing this action, its claims of nationwide discrimination must be dismissed.  Sterling's Memorandum of Law [337], Points I and II.  The EEOC responds that "the Courts should not inquire into the sufficiency of [its] investigation".  EEOC's Brief [362], p. 5.

## ANALYSIS

**A.     May the Court Inquire as to the Scope of the EEOC's Pre-Suit Investigation?**

"[T]he EEOC does not function simply as a vehicle for conducting litigation on behalf of private parties; it is a federal administrative agency charged with the responsibility of investigating claims of employment discrimination and settling disputes, if possible, in an informal, noncoercive fashion. Unlike the typical litigant . . . the EEOC is required by law to

refrain from commencing a civil action until it has discharged its administrative duties." Occidental Life Insurance Co. of California v. E.E.O.C., 432 U.S. 355, 368 (1977).

"Before the EEOC is able to file a lawsuit in its name, it must establish that it has met four conditions precedent, namely: the existence of a timely charge of discrimination, the fact that EEOC conducted an investigation, issued a reasonable cause determination, and attempted conciliation prior to filing suit." E.E.O.C. v. Grane Healthcare Co., 2013 WL 1102880, *3 (W.D.Pa. 2013); Occidental, 432 U.S. at 359-60; 42 U.S.C. §2000e-5(b).

While the EEOC alleges that "[a]ll conditions precedent to the institution of this lawsuit have been satisfied" (Complaint [1], ¶6), Sterling replies that the claims are "beyond the scope of any administrative charge or the EEOC's investigation thereof, were not subject to administrative investigation . . . processes, and/or were not included in any investigation . . . by the EEOC".  Answer [8], Sixth Affirmative Defense.  Sterling's denial of EEOC's performance of a condition precedent (namely, a pre-suit investigation) as an affirmative defense does not shift the burden of proof on that issue to Sterling - instead, it remains the EEOC's burden to prove performance of that condition.  See Dynasty Apparel Industries Inc. v. Rentz, 206 F.R.D. 603, 607 (S.D.Ohio 2002); 2 Moore's Federal Practice, §9.04[4] (Matthew Bender 3d ed.).

The fact that "a district court should not examine the adequacy of an EEOC[ ] investigation" does not mean that it "should not examine whether the investigation occurred at all".  Grane Healthcare, *5.  "Whether the EEOC fulfilled its statutory duties as a precondition to suit is a proper issue for the district court to decide . . . . To rule to the contrary would severely undermine if not completely eviscerate Title VII's integrated, multistep enforcement procedure."

Equal Employment Opportunity Commission v. Swissport Fueling, Inc., 916 F.Supp.2d 1005, 1036 (D.Ariz. 2013).

Therefore, while courts "will not review the sufficiency of the EEOC's pre-suit investigation . . . . courts will review whether an investigation occurred". EEOC v. JBS USA, LLC, 940 F. Supp.2d 949, 964 (D.Neb. 2013); EEOC v. Hibbing Taconite Co., 266 F.R.D. 260, 272 (D.Minn. 2009). They may also examine the scope of that investigation, for while "[a]ny violations that the EEOC ascertains in the course of a reasonable investigation of the charging party's complaint are actionable", General Telephone Co. of the Northwest, Inc. v. Equal Employment Opportunity Commission, 446 U.S. 318, 331 (1980), "it must discover such individuals and wrongdoing *during the course of its investigation*". E.E.O.C. v. CRST Van Expedited, Inc., 679 F.3d 657, 674 (8th Cir. 2012) (emphasis in original). "Where the scope of its pre-litigation efforts [is] limited - in terms of geography, number of claimants, or nature of claims - the EEOC may not use discovery in the resulting lawsuit as a fishing expedition to uncover more violations." Id. at 675.

Accordingly, in determining whether a particular claim may be asserted in an EEOC complaint, "the relationship between the complaint and the scope of the investigation is central". E.E.O.C. v. Jillian's of Indianapolis, IN, Inc., 279 F. Supp.2d 974, 980 (S.D.Ind. 2003). "Courts have limited the EEOC's complaint where it exceeds the scope of the investigation." E.E.O.C. v. Dots, LLC, 2010 WL 5057168, *2 (N.D.Ind. 2010).

For example, in E.E.O.C. v. Bloomberg L.P., ___F. Supp.2d___, 2013 WL 4799150 **7, 9 (S.D.N.Y. 2013) the court granted summary judgment dismissing the EEOC's claims for individual relief, finding that its pre-suit investigation was class-wide only: "the Court

holds that its prior finding that the EEOC satisfied its pre-litigation obligations with respect to a class-wide claim applies to that class-wide claim only and that it must look independently at whether the EEOC fulfilled its statutory pre-litigation requirements with respect to the individual claims upon which it purports to continue this litigation . . . . Thus, the Court holds that no genuine issue of fact remains as to whether the EEOC investigated any of the Section 706 individual claims prior to commencing litigation."

Similarly, in Jillian's the court granted summary judgment dismissing the EEOC's claims of nationwide discrimination, finding that the EEOC had failed to conduct a nationwide investigation: "[t]he *nationwide* class named in the EEOC's Amended Complaint is not reasonably anticipated in its investigation into the four charges filed against Jillian's Indianapolis.  The EEOC's investigation of the four charges was conducted entirely with respect to Jillian's Indianapolis.  Its Amended Complaint, alleging a nationwide class, has insufficient basis in its actual investigation . . . . For these reasons, we GRANT Jillian's motion for summary judgment with respect to the EEOC's nationwide pattern or practice claim." 279 F.Supp.2d at 980, 983 (emphasis in original).

Therefore, I must decide whether there is a triable issue of fact as to whether the EEOC conducted a nationwide investigation of Sterling's employment practices prior to commencing this action.

B.  **Can the EEOC Prove that it Conducted a Nationwide Investigation of Sterling's Employment Practices?**

Because the EEOC bears the burden of proving that it satisfied all conditions precedent to maintaining this action, Sterling need not prove that the EEOC did *not* conduct a nationwide investigation - rather, in order to avoid summary judgment, the EEOC must point to evidence showing that it *did*. "A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff must designate specific facts showing that there is a genuine issue for trial." Parker v. Sony Pictures Entertainment, Inc., 260 F.3d 100, 111 (2d Cir. 2001). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff". Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

The EEOC admits that there is "little investigative material in the files beyond the charges, Sterling's responses, and other correspondence." EEOC's Memorandum of Law [110], p. 15. It also admits that Mr. Ging, its sole investigator after June 2007, "has very little memory of what actions he undertook in this investigation conducted over seven years ago". EEOC's Brief [362], p. 13.

Sterling alleges that "[t]here is no evidence produced by EEOC in this litigation suggesting that Investigators Carlo, Melendez, Rawlins, or Thompson [EEOC's four other investigators] conducted any sort of nationwide investigation of Sterling, based on their involvement prior to the transfer of all Charges to Ging". Sterling's Statement of Facts [338], ¶52. In response, the EEOC "objects to the lack of evidentiary support for this 'fact,' and denies

in the form and manner alleged.  Nearly all the charges filed stated that they were filed on behalf of the charging party and all women similarly-situated at Sterling Jewelers stores".  EEOC's Second Amended Statement of Facts [378], ¶52 (citing 12 of the charges asserted by the Charging Parties).

That response is insufficient to controvert Sterling's assertion, because the fact that charges were asserted does not by itself prove that they were then investigated, nor does it prove the scope of any investigation which may have occurred. In opposing the motion, the EEOC "may not rely on conclusory allegations . . . . At the summary judgment stage, a nonmoving party must offer some hard evidence".  Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005).

Sterling further alleges that Mr. Ging did not recall investigating any stores besides those in Massena, New York and Tampa, Florida.  Sterling's Statement of Facts [338], ¶54 (citing Mr. Ging's deposition testimony).  Responding to that assertion, the EEOC "denies in the form and manner alleged.  Whatever Mr. Ging recalled or did not recall on the date of his deposition, he conducted a nationwide investigation of the charges against Sterling, which nearly universally stated that they were filed on behalf of all women similarly-situated to the Charging Parties, and he received information from Charging Parties' attorneys to support the nationwide scope of the allegations against Sterling."  EEOC's Second Amended Statement of Facts [378], ¶54.

In support of its position, the EEOC cites Mr. Ging's deposition testimony that he "investigated all of these charges as class charges" ([358-7], p. 171).  However, the EEOC may not "trade on the inherent ambiguity in the term 'class' to [its] own advantage".  CRST, 2009 WL

2524402 *18 (N.D.Iowa 2009), aff'd, 679 F.3d 657 (8th Cir. 2012). Mr. Ging did not specify which type of class he investigated - *i.e.*, local, regional, or nationwide. See E.E.O.C. v. Outback Steak House of Fla., Inc. 520 F.Supp.2d 1250, 1267 (D.Colo. 2007) (noting that "class" can also mean a local or regional class instead of a nationwide class). Therefore, his statement that he investigated "class" charges constitutes no evidence that he investigated a *nationwide* class.

The EEOC also cites the November 30, 2007 letter from counsel for the Charging Parties, but, as previously noted, Mr. Ging could not recall whether he reviewed that letter. Finally, the EEOC cites the charges asserted by the Charging Parties, which does not prove that those charges were investigated. For these reasons, I adopt Sterling's assertions (Sterling's Statement of Facts [338], ¶¶52, 54) that none of the EEOC investigators conducted a nationwide investigation.

Although the EEOC claims that "Sterling stonewalled the EEOC at every turn" in its attempt to obtain Sterling's nationwide pay and promotion data ([376], p. 10), as previously noted (footnote 2, supra) the parties had agreed that Sterling was under no obligation to provide additional information in connection with the EEOC administrative investigation. [365-13], ¶8. But for that agreement, the EEOC could have subpoenaed the information from Sterling,[3] but did not do so because it "subsequently received the detailed analysis and tables from Dr. Lanier. So EEOC did not follow through on this". [376], p. 42.

---

[3] "The EEOC has express statutory authority to issue subpoenas requiring the attendance and testimony of witnesses or the production of any evidence during its investigations." E.E.O.C. v. Deer Valley Unified School District, 968 F.2d 904, 906 (9th Cir. 1992) (*citing* 42 U.S.C. §2000e–9, 29 U.S.C. §161(1)).

The EEOC now points to Dr. Lanier's analysis as "the key document" proving that it conducted a nationwide investigation ([376], p. 36), stating that:

- "EEOC obtained statistical analysis finding company-wide sex-based disparities in compensation and promotions from the Charging Parties' expert" (EEOC's Letter Brief [382], p. 2);

- "[M]ost assuredly the analyses were reviewed and, obviously, that's what's being referenced in the [letter of] determination" ([376], p. 7);

- "It absolutely was part of the EEOC investigation and it was expressly referenced in the EEOC Letter of Determination . . . . We will fully admit that EEOC did not conduct its own separate statistical analyses. So that what was being referred to, obviously, is the statistical analyses . . . the Lanier table" (id., pp. 14-15);

- "Obviously, it was in the file for a reason. Obviously, it was referenced in the Letter of Determination. So it was not just a piece of paper or a series of analyses that were just sitting in EEOC's file with no one ever looking at it" (id., p. 26);

- "the fact that EEOC credited the evidence presented by charging parties in its Letter of Determination is totally legitimate, it's something that happens all the time" (id., p. 36);

- "there was nothing improper whatsoever about EEOC obtaining and then relying on information and analyses from an 'interested' third party such as Dr. Lanier" (EEOC's Brief [362], p. 10).

I find it more than a little ironic for the EEOC to accuse Sterling of stonewalling, for when Sterling inquired into these *very same* areas during discovery, the EEOC blocked its inquiries:

- when Sterling asked EEOC's Rule 30(b)(6) witness (Jennifer Carlo) "what is the statistical analysis of pay and promotion data that's referenced" in the Letter of Determination, the EEOC directed her not to answer ([339-25], p. 228);

- when Sterling asked Ms. Carlo whether the reference was to Dr. Lanier, the EEOC directed her not to answer (id., pp. 228-29);

- when Sterling asked Mr. Ging "what statistical analysis is being referenced" in the Letter of Determination, the EEOC directed him not to answer, asserting deliberative privilege ([339-24], p. 230);[4]

- when Sterling asked Ms. Carlo "who reviewed the statistical tables from Dr. Lanier", the EEOC again directed her not to answer, claiming that question "calls for deliberative information" ([339-25], p. 190);

- when Sterling asked Ms. Carlo whether the EEOC "under[took] any validation of Dr. Lanier's work", and whether it "accepted Dr. Lanier's tables or . . . independently verified" them, the EEOC directed her not to answer, claiming that question "calls for deliberations" (id., pp. 184-85);

---

[4] Moreover, Ging did not recall reviewing Dr. Lanier's tables or the November 30, 2007 submission from the claimants' attorneys ([339-24], pp. 186, 188).

- ▪ when Sterling asked Mr. Ging whether he performed "any fact investigation at all concerning Dr. Lanier's tables", or took "any steps to verify the accuracy of the information in Dr. Lanier's table", the EEOC directed him not to answer, asserting deliberative privilege ([339-24], pp. 197, 200); and

- ▪ when Sterling asked Mr. Ging if he knew which witness testimony allegedly corroborated the allegations of nationwide sex discrimination contained in the Letter of Determination, the EEOC directed him not to answer, asserting deliberative privilege (id., p. 231).[5]

Once Sterling filed its Answer [8] denying that the EEOC had conducted a nationwide investigation of its employment practices, the EEOC knew that it would bear the burden of proving compliance with this condition precedent. It also knew that an assertion of privilege (whether properly or not)[6] during discovery might affect its ability to satisfy that burden, since "the claim of privilege is not a substitute for relevant evidence". United States v. Rylander, 460 U.S. 752, 761 (1983). "[A] litigant claiming . . . privilege is not freed from adducing proof in support of a burden which would otherwise have been his." United States v.

---

[5] While the EEOC subsequently offered to allow Mr. Ging to answer certain questions in writing in lieu of an oral deposition, this proposal was unacceptable to Sterling ([327], p. 4), and with good reason. See Mill-Run Tours, Inc. v. Khashoggi, 124 F.R.D. 547, 549 (S.D.N.Y. 1989) ("there are several reasons why oral depositions should not be routinely replaced by written questions . . . . First, the interrogatory format does not permit the probing follow-up questions necessary in all but the simplest litigation. Second, without oral deposition, counsel are unable to observe the demeanor of the witness and evaluate his credibility in anticipation of trial . . . . Finally, written questions provide an opportunity for counsel to assist the witness in providing answers so carefully tailored that they are likely to generate additional discovery disputes").

[6] Without deciding the issue, I noted that "some of the objections . . . I don't think should have been asserted". [327], p. 21. However, the propriety of the objections is not the issue here - rather, the question is whether the EEOC can now rely upon information which it previously withheld as privileged.

Certain Real Property and Premises Known as 4003-4005 5th Ave., Brooklyn, N.Y., 55 F.3d 78, 83 (2d Cir. 1995). "In other words, a party who asserts the privilege . . . must bear the consequence of lack of evidence . . . and the claim of privilege will not prevent an adverse finding or even summary judgment if the litigant does not present sufficient evidence to satisfy the usual evidentiary burdens in the litigation." Id.[7]

None of this should come as a surprise to the EEOC. On August 15, 2012, I cautioned that the EEOC "can't assert the privilege and then waive the privilege when the charges are attacked" ([295], p. 13). On June 26, 2013, I again warned that the EEOC "can't use a privilege as both a sword and a shield . So if they're saying they're not going to disclose this information to [Sterling], then they're also not going to be allowed to disclose it to the Court to argue that the scope was broader than what [Sterling is] saying it is" ([327], p. 16).[8] Therefore, the EEOC may not now oppose Sterling's motion for summary judgment by relying upon the information which it withheld from Sterling in discovery.

Accordingly, I must decide whether the information which the EEOC has *not* withheld from Sterling in discovery is sufficient to prove that it conducted a nationwide

---

[7] *See also* S.E.C. v. Pittsford Capital Income Partners, L.L.C. 2007 WL 2455124, *14 (W.D.N.Y. 2007) (Telesca, J.), aff'd in part, app. dismissed in part, 2008 WL 5435580 (2d Cir. 2008) (Summary Order) ("when a party invokes [a] privilege . . . courts may then preclude that party from introducing evidence that was not previously available to his or her adversary due to the party's invocation of the privilege"); Hammond v. Hendrickson, 1990 WL 179893, *2 (N.D.Ill. 1990) ("Such evidence was never obtained by virtue of Kidder's invocation of the privilege during discovery. Accordingly such evidence shall now be barred").

[8] "It is well established in this Circuit that a party may not use . . . privilege as both a sword and a shield." Favors v. Cuomo, 285 F.R.D. 187, 198 (E.D.N.Y. 2012). "In other words, a party cannot . . . affirmatively rely on privileged communications to support its claim . . . and then shield the underlying communications from scrutiny by the opposing party." In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000).

investigation prior to commencing this action.  In arguing that this question is not judicially reviewable, the EEOC notes that "42 U.S.C. §2000e-5(b) . . . simply provides that EEOC 'shall make an investigation' of a discrimination charge, without . . . any statutory guide on the substance of such investigation, which is committed to the agency's discretion.  Like the subsection's conciliation provision, such an open-ended provision looks nothing like a judicially reviewable prerequisite to suit."  EEOC's Letter Brief [382], pp. 1-2.[9]

       I disagree.  Although the statute does not define "investigation", "[w]hen a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning . . . . [T]he word 'investigation' connotes a 'thorough' or 'searching inquiry'".  In re WorldCom, Inc. Securities Litigation, 346 F.Supp.2d 628, 678 (S.D.N.Y. 2004).  "Dictionary definitions of the word investigate include: '[t]o inquire into (a matter) systematically' . . .'to observe or study by close examination and systematic inquiry' . . . 'to examine a crime, problem, statement, etc. carefully, especially to discover the truth'."  MCI LLC v. Rutgers Casualty Insurance Co., 2007 WL 4258190, *6 (S.D.N.Y. 2007).

       The EEOC's  "duty to investigate is both mandatory and unqualified".  Martini v. Federal National Mortgage Association, 178 F.3d 1336, 1346 (D.C. Cir.1999), cert. dismissed, 528 U.S. 1147 (2000).  The investigation must be "genuine", Equal Employment Opportunity Commission v. Pierce Packing Co., 669 F.2d 605, 608 (9th Cir. 1982), meaning that the EEOC

---

[9] In support of this argument, the EEOC cites E.E.O.C. v. Mach Mining, LLC, ___F.3d___, 2013 WL 6698515 (7th Cir. 2013), holding that "an alleged failure to conciliate is not an affirmative defense to the merits of a discrimination suit." Id., *1. However, the issue here is failure to investigate, not failure to conciliate - and in any event, Mach Mining recognizes that unlike the Seventh Circuit, the Second Circuit *does* recognize the defense of failure to conciliate. Id., *11 (citing EEOC v. Johnson & Higgins, Inc., 91 F.3d 1529, 1534 (2d Cir.1996)).

"cannot defer to the opinions of [the parties]; it has the statutory duty to make an *independent* investigation, reasonable in scope, to determine *for itself*" whether the charge has a factual basis. E.E.O.C. v. Michael Construction Co., 706 F.2d 244, 252-53 (8th Cir. 1983), cert. denied, 464 U.S. 1038 (1984) (emphasis added).  The mere gathering of information from others does not constitute an "investigation", Groves v. Department of Corrections, 811 N.W.2d 563, 570 (Mich. App. 2011); nor does the parroting of that information without independent analysis.  *See* MCI, 2007 WL 4258190, *7 ("the February 16, 2005 letter . . . does not evidence any independent inquiry of the claim.  Instead, the Letter simply restates some of the allegations in the Pelcrete Complaint and Plaintiffs' demand letter . . . . This does not constitute an 'investigation' of the claim").

        The EEOC alleges that its determination of nationwide discrimination "was based on the documents and information in the investigation files, including the statistical analysis of Sterling's nationwide personnel and payroll data submitted by Charging Parties". EEOC's Second Amended Statement of Facts [378], ¶109. However, "[s]tatements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment". Major League Baseball Properties, Inc. v. Salvino, Inc., 542 F.3d 290, 310 (2d Cir. 2008).

        The only nationwide data specifically identified by the EEOC is Dr. Lanier's September 4, 2007 statistical analysis [339-32], and, having invoked privilege in response to Sterling's inquiries in discovery, the EEOC cannot now be allowed to argue that this was the

analysis referred to in its Letter of Determination, or that it took any steps to verify the reliability of that analysis. Absent such proof, there is no evidence that its investigation was nationwide.[10]

While the EEOC accuses Sterling of "gamesmanship, diverting the Court's attention from the merits of EEOC's allegations and Sterling's defenses thereto" (EEOC's Letter Brief [382], p. 2), it ignores the fact that the absence of a nationwide pre-suit investigation *is* a defense to the EEOC's nationwide pattern-or-practice claim. "Just as Congress has charged the EEOC with helping ensure that employers do not single out employees on account of certain characteristics, this Court is charged with ensuring that any actions brought before it by the EEOC are within the parameters of the law as set forth by Congress, regardless of how well-intentioned the EEOC's purpose." Bloomberg,*7. "Even the most recalcitrant employer who flouts Title VII's prohibitions against unlawful employment discrimination . . . is due the process that Title VII mandates." Id.,*10.

The EEOC has already had one opportunity to conduct a pre-suit investigation and to provide discovery as to the scope of that investigation. Once is enough. "In the litigation process, when certain moments have passed, district courts are not required to give parties a 'do over'." Harleysville Lake States Insurance Co. v. Granite Ridge Builders, Inc., 2009 WL 4843558, *2 (N.D.Ind. 2009). "[W]here, as here, the EEOC completely abdicates its role in the

---

[10] Moreover, I question whether the EEOC could rely upon the Lanier analysis even if it had *not* invoked privilege during discovery. While the parties agreed that the analysis could be placed in the EEOC's investigative file, they also agreed that it would not lose its mediation privilege - meaning that it could not be relied upon in litigation. As the EEOC's attorney admitted during oral argument, "the mediation agreement may impact the EEOC's ability . . . of using the Lanier analyses for the purposes of this litigation . . . .What is not permitted is for us to say, Your Honor, for example, the Lanier analyses . . . are going to be what EEOC relies on in this court to prove pattern or practice of discrimination. That would be problematic under this agreement" ([376], p. 16). Given that admission, why is it not equally problematic for the EEOC to refer to the Lanier analysis as evidence that it conducted a nationwide investigation, which is a condition precedent to this litigation?

administrative process, the appropriate remedy is to bar the EEOC from seeking relief . . . and dismiss the EEOC's Complaint." Bloomberg, *10. Therefore, I recommend that the EEOC's claim of a nationwide pattern or practice of employment discrimination by Sterling be dismissed, with prejudice.

C.     **Should the EEOC's Statement of Facts be Stricken?**

Sterling also moves to strike portions of the EEOC's Statement of Facts [362-1] submitted in opposition to its motion for summary judgment, arguing that it "it contains statement[s] that rely on an admissible evidence not in the record, as well as legal argument and generalized conclusory statements" [370]. In response to that motion, the EEOC has submitted an Amended- and Second Amended Statement of Facts [373, 378].

Having already addressed several deficiencies of in the EEOC's factual response to Sterling's summary judgment motion, I do not see the need to address the motion to strike in greater detail at this time. Therefore, in light of my recommendation to dismiss the EEOC's claim of nationwide discrimination by Sterling, the motion to strike is denied, without prejudice to renewal in the event that my recommendation is not adopted by District Judge Arcara.

D.     **Should I Reconsider the Applicability of the Statute of Limitations?**

Sterling also asks me to reconsider my Amended Report and Recommendation [60], subsequently adopted by Judge Arcara [67], dealing with the applicable Statute of Limitations on the EEOC's pattern or practice claim. Sterling's Memorandum of Law [337], Point III. Sterling argues that "since this ruling, there has emerged a uniform body of case law

holding that the 300-day limitations period set forth in §706 limits claims under §707. Indeed, since this Court's January 2010 ruling, every court to have considered the matter has held that the 300-day charge-filing period applies to cases brought under §707 (id., p. 20). While that may be true, none of those decisions are from the Supreme Court or circuit courts of appeal.

"Under the law of the case doctrine, [a] court adheres to its own decision at an earlier stage of the litigation unless there are cogent or compelling reasons not to, such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Sanders v. Sullivan, 900 F.2d 601, 605 (2d Cir. 1990). In my view, none of those reasons are present here. Therefore, to the extent necessary,[11] I recommend that Sterling's request for reconsideration be denied.

## CONCLUSION

For these reasons, Sterling's motion to strike [370] is denied, without prejudice, and I recommend that its motion for partial summary judgment [336] be granted in part and denied in part. Unless otherwise ordered by Judge Arcara, any objections to this Report, Recommendation and Order must be filed with the clerk of this court by January 21, 2014 (applying the time frames set forth in Fed. R. Civ. P. ("Rules") 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision".  Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

---

[11]  Since the only pattern or practice claim alleged by the EEOC is a nationwide pattern or practice claim, this request may be moot if my recommendation to dismiss that claim is adopted.

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: January 2, 2014

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge